W. A. FINCANNON et al. v. E. SUDDERTH and wife.

(Filed 14 May, 1907).

1. **Action Trespass Quare Clausum Fregit—Pleadings—Boundaries.**
   In the trial of an action for trespass *quare clausum fregit,* if the
   plaintiff sets out in his complaint the deed under which he
   claims title, containing a description of the *locus in quo,* he will
   not, without amendment, be permitted to claim some other
   description not included in his deed. An adverse finding by the
   jury of the issue directed to his controverted allegation defeats
   his action.

2. **Same—Evidence—Contemporaneous Survey.**—In the trial of an
   action involving a disputed boundary, it is competent to show
   by a surveyor that, for the purpose of fixing the land conveyed,
   and at the time of making the deed, an actual survey was had
   in the presence of the purchaser, the corners marked and the
   lines run. The party claiming under such deed shall hold accord-
   ing to such survey, notwithstanding a mistaken description in
   the deed. (Affirming *Cherry v. Slade,* 7 N. C., 82; *Elliott v.
   Jefferson,* 133 N. C., 207).

3. **Same—Color of Title—Adverse Possession.**—A party cannot ac-
   quire title by an ouster followed by seven years' possession under
   color of title, unless the description in the deed or paper-writing
   under which he claims covers the *locus in quo.*

4. **Same—Pleadings—Issues—Practice—Judgment.**—Under the Code
   of Civil Procedure a party may join in his complaint a cause of
   action for trespass with one to settle a disputed boundary, but he
   should state the two causes of action separately, to the end that
   appropriate issues may be submitted and judgment entered upon
   the verdict.

CIVIL ACTION, tried before *Cooke, J.,* and a jury, at
December Term, 1906, of the Superior Court of BURKE
County.

Plaintiffs sue for a trespass upon the land described in
the complaint. They allege that they are the owners of a
tract of land situate in Burke County, conveyed by B. A.
Berry to their father, Isaac Fincannon, 31 March, 1876:
"Beginning on a rock near a small branch 22 poles north

of the railroad, the same being the corner of a tract of land owned by the heirs of S. A. Sudderth, deceased, or the heirs of John Sudderth, deceased, and known as the Johnson tract, and runs west with the line of the Sudderth tract 228 poles to a stake in the old Jonathan Duckworth line, then south, etc., making a parallelogram containing 90 acres. They allege that they and their ancestor have been in the possession of the land more than twenty years, and that defendants trespassed upon it and cut and carried away valuable timber.    Defendants own the Sudderth-Johnson land, lying adjacent to and north of the Fincannon land. The strip of land in controversy lies between the line shown on the map (140 N. C., 247), beginning at a post-oak, "L," and running east along a marked line to stake "K," and the line beginning at a rock, "E," and running west to a stake, "G."    The plaintiffs insist that the original southern line of the Sudderth-Johnson tract runs from the post-oak east to a stake.    An issue was submitted to the jury directed to that contention and found against plaintiffs.    The defendants contended that, at the time of and cotemporaneous with the deed from Berry to Fincannon, a line was run, by direction of Berry and assented to by Fincannon, fixing the beginning of the tract to be conveyed at the rock and running west to the Duckworth line at "G."    To meet this contention, his Honor submitted the following issue: "At the time of the execution of the deed by Berry to Isaac Fincannon, and just before and cotemporaneous therewith, and for this purpose, did the parties to the said deed, by consent, adopt the rock claimed by defendants as the corner of the land surveyed, and did they then survey the line from the said rock west, along the line of marked trees, 228 poles, to a stake in the old Jonathan Duckworth line, indicated by the red line on the map, and did they, by consent, adopt the said line as the true line of the Fincannon tract and as

the true line of the Sudderth-Johnson tract?" He instructed them upon said issue: "Upon the third issue the Court instructs the jury that the burden is upon the defendants, and before you can answer either one of these issues 'Yes' you must be satisfied that the parties to the deed by consent adopted the rock as the corner and that they had the line running west from said rock surveyed 228 poles to a stake in the Duckworth line, and that they found on said line marked trees, and found pointers when the line reached the Duckworth line, and that by consent they adopted this line as the true line, and this was cotemporaneous with and for the purpose of executing the deed, then they should answer that issue 'Yes'; if they shall not so find they should answer the issue 'No.'" They responded to the issue, "Yes." An issue was submitted, directed to the question of plaintiffs' alleged possession up to the line beginning at the post-oak for twenty-one years (evidently intended to be twenty), which was answered "No."

The fifth issue, "Are the plaintiffs the owners and entitled to the possession of the land between the red and black lines?"—being the land in controversy—may by consent be answered by his Honor as a conclusion of law arising upon the answer by the jury to the other issues. The jury found that no trespass had been committed on the land "as alleged in the complaint." The plaintiffs claimed title as the heirs of Isaac Fincannon, whose death, intestate, was shown. They also put in evidence two deeds executed by him: (1) To W. A. Fincannon, dated 21 April, 1887, containing the following calls: Beginning at a white-oak, and running north 70 poles, crossing the railroad to a stake in Berry's line; thence west with Berry's line, 120 poles, to a stake at his corner; thence south 70 poles and east 120 poles, crossing the railroad, to the beginning, containing 52 acres. The white-oak called for as the beginning is located south of the

point marked (Spring) on the map, thus forming a parallelogram of 120 by 70 poles. The Berry line called for is the same as the Sudderth line referred to in the other deeds. (2) Deed of same date to D. C. Fincannon. (3) Deed of same date to T. A. Fincannon. It is not necessary to set out the boundaries in these deeds.

The plaintiffs asked a number of special instructions, excepted to the refusal to give several of them, and to the instructions given. His Honor, upon the verdict of the jury upon the other issues, answered the fifth issue "No," to which plaintiffs duly excepted. From a judgment on the verdict plaintiffs appealed.

*John T. Perkins* and *J. M. Mull* for plaintiffs.
*Avery & Erwin* and *S. J. Erwin* for defendants.

CONNOR, J., after stating the case: This cause was before us at the Fall Term of 1905 (140 N. C., 246) upon an appeal from a judgment of nonsuit. The nonsuit was taken upon an intimation of his Honor that he would charge the jury as set out in that appeal. The evidence sent up was indefinite and fragmentary. We were of the opinion that, in the then condition of the record, the merits of the case had not been disposed of, and directed a new trial. At the trial before Judge Cooke, specific issues were submitted, and the finding of the jury upon them settles the controversy adversely to plaintiffs' contention. If, as found by the jury, the Sudderth line was not from the post-oak, east to the stake, the plaintiffs' contention that the "Sudderth-Johnson line controls the call in the deed from Berry to Isaac Fincannon" fails.

The principle for which plaintiffs contend, that a call for a natural object, or a well-settled fixed line, will control course and distance, does not avail them, because the jury find that the line to which they contend the call carries them

is not fixed. How can they go to the Sudderth-Johnson (same as the Berry) line, disregarding the call for the rock, when they fail to establish such line? In this condition of the record we must seek some other source to aid us in fixing the line. The plaintiffs failing to establish the Sudderth (or Berry) line, would be unable to locate their land unless they can resort to some other source or call in their deed. We are thus compelled to adopt the rock as the beginning point and run the line called for to the next station—the Duckworth line—discarding the reference to the Sudderth line. In addition to this conclusion from the finding upon the first issue, and pointing to the rock, the jury find that, at the time of and cotemporaneous with the execution of the deed from Berry to Isaac Fincannon, a survey was made with a view to the execution of the deed in which the rock was made the beginning point, and the calls were therefrom. In the first trial, the notes of Mr. Huffman's testimony were very meagre and indefinite. In this record it is set out in full. He says that he surveyed the land, at the request of Berry, some thirty years ago, and not long before the deed was made to Fincannon. Berry was there; Fincannon was not—he was blind. "I began 22 poles north from the railroad track, at a rock near a branch—same one that is there now. I would judge the rock to weigh at least 100 pounds. It is two feet out of the ground. It was evidently set up there.    *    *    *    I think there was one pointer—a pine—there. I did not know of any reputation as to that rock being a corner before I surveyed the tract, but since then I know the reputation that it is a corner of the Johnson and Sudderth lines. Mr. B. A. Berry, now deceased, pointed out this rock to me as a corner of the Sudderth, or Johnson, tract. That was more than thirty-one years ago, when Berry owned the land in controversy, but before he acquired the Johnson-Sudderth tract." He fur-

ther said that he ran from the rock west to the Duckworth land; that he ran the calls as appears in the deed from Berry to Fincannon. The first call was a well-marked line, and at the end found some pointers, marks about the age of those on line; they were between forty and sixty years old. He did not put the rock there; does not know who did; he did not mark any line—the marks were already there. There was evidence tending to show that the rock was put there in 1858 or 1859. Denton swore that he ran the line from the rock some fifteen years ago. Berry was present—no one else. This evidence, if accepted by the jury, was sufficient to sustain defendants' contention in regard to the third issue, and fixed the location of the land conveyed by Berry to Isaac Fincannon, under which plaintiffs claim, from the rock west to the Duckworth land. This testimony brings the case clearly within the rule laid down in *Elliott v. Jefferson*, 133 N. C., 207.

The plaintiffs except to the admission of the declarations of Berry. The exceptions cannot be sustained. Without regard to the true location of the Johnson-Sudderth line, it was clearly competent for Berry to make a new line from the rock west to the Duckworth land for the purpose of conveying to Fincannon, and this the jury find he did, and Fincannon accepted the deed made in accordance with the boundaries so established. It may be that they supposed that the rock was in the Sudderth line; and if that line was fixed and there was no controlling evidence to the contrary, it would, as we said in the first appeal, control; but, as the case is now presented, the jury have found that the Johnson-Sudderth line is not located according to plaintiffs' contention—is not located at all; hence, the rock, the fixed point, must control. This being so, unless there is error in the admission of testimony or his Honor's instructions, the plaintiffs necessarily fail to make out their case. It becomes a

question of boundary, dependent upon the location of the beginning point.

We have carefully examined plaintiffs' prayers for instructions, together with the instructions given. Many propositions of law included in the special instructions are correct, but not applicable to the issues. His Honor stated the real questions involved in the third issue, which was conclusive of the controversy, clearly, and instructed the jury correctly. There was evidence tending to show that the post-oak was the original corner of the Sudderth land; there was also evidence to the contrary, and the jury were the sole judges of its weight. It seems that the finding of either issue against the plaintiffs was fatal to their case. There was no exception to the issues submitted. It would seem that, in view of the complaint, no question of title acquired by an ouster, ripening by possession, could arise. It is not necessary, however, to consider this phase of the case because of the verdict on the fourth issue. The exceptions to his Honor's instructions upon that issue cannot be sustained. He may well have instructed them as a matter of law that there was no such *possessio pedis* shown as was necessary to base a claim to title without color. Plaintiffs requested his Honor to instruct the jury that, if they found that W. A. Fincannon had been in the adverse possession of the *locus in quo* for seven years under color of title, they should answer the fifth issue "Yes." This view is based upon the contention that the deed from Isaac Fincannon to W. A. Fincannon of 21 April, 1887, covers the *locus in quo*. It will be noted that this deed does not call for the rock, but, beginning at a white-oak on the southern line of the Isaac Fincannon tract, calls for a line north 70 poles, crossing the railroad to a stake in Berry's line; then west with Berry's line 120 poles, to a stake, his corner. The plaintiff W. A. Fincannon says that, eliminating all ques-

tions arising from the other deeds, this call carries him to the Berry (formerly Sudderth-Johnson) line. He says that, having shown possession up to Berry's line by an ouster, under color, · such possession, at the end of seven years, ripened into a perfect title. He is confronted with the difficulty in making this contention that he has not been able to locate, according to his claim, the Berry line, for which his deed calls. The jury finds that it runs from the rock west; hence his call would be color only to that line, and any possession beyond would be without color and could ripen only after twenty years of *possessio pedis,* and this the jury find that he had not had. Besides, no issue presenting the theory upon which this instruction is based was asked or submitted. If he had made a general allegation of title, as pointed out in *Mobley v. Griffin,* 104 N. C., 112, he could have maintained his right to recover by showing title out of the State and seven years' adverse possession under color. He elected, however, to set out his title, and the issues submitted were in accordance with his allegation. Besides, the record shows that it was agreed that all questions of fact were to be settled by the verdict upon the issues, and that the question of title was to be adjudged by the Court as a matter of law. There was, therefore, no phase of the pleadings, or issues, presenting the principle involved in the prayer.

We do not perceive how, in the light of the evidence, and the verdict upon the issues, his Honor could have given the instruction. We have examined the record with care, and find no error. The case has been tried upon its merits, and the jury have found against the plaintiffs' contention. We notice that the action is for trespass, although the plaintiffs ask that they be declared the owners of the land described in the complaint "to the said post-oak, and the line running east from the same." This prayer enlarges the scope of the action from one simply to recover damages for entering upon

the close and invading the possession into an action to settle
a disputed boundary and adjudge title.   There is no objec-
tion to this being done, under our system of pleading, in one
action, provided it is clearly understood.   The old action of
*trespass quare clausum fregit,* being confined to an injury to
the possession, unless the title was put in issue and settled,
did not operate as an estoppel.   The civil action, by which
all rights are enforced and wrongs remedied, avoids many of
the technical difficulties surrounding the old forms of action.
While the advantages of the reformed procedure are mani-
fest, the necessity for so drawing pleadings that parties may
know exactly what is included in the issue and settled by the
judgment is equally clear.   Nothing herein said shall be
construed to operate as an estoppel against the plaintiff's
claiming title to any land of which he, or those under whom
he claims, has been in the adverse possession for more than
twenty years.

The judgment must be

Affirmed.