DiGirolamo *v.* Philadelphia Gun Club, Appellant.

Argued April 15, 1952. Before Drew, C. J., Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

reargument refused June 26, 1952.

*Lewis H. VanDusen, Jr.,* with him *John A. Ballard, Charles J. Biddle,* and *Drinker, Biddle & Reath,* for appellant.

*Howard M. Kuehner,* for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, May 27, 1952:

Plaintiff, Joseph DiGirolamo, the owner of a farm adjoining the property in Bucks County, of the Philadelphia Gun Club, defendant, sought an injunction in the court below to enjoin defendant from conducting shooting meets in such a manner as to cause shot, fired by the members of the gun club and their guests, to fall upon plaintiff's land. The court below granted the prayer of plaintiff's bill and entered a decree restraining defendant, its members, guests and employes from operating its shooting range in the direction of plaintiff's property unless such precautionary steps as were necessary were taken to prevent the shots fired from the gun club property from falling on plaintiff's farm. From this decree defendant has appealed.

Defendant is a duly incorporated social and recreational club and as such, since 1895, has owned and occupied a tract of land, containing approximately 15 acres, located immediately south of plaintiff's property. During the succeeding years defendant has conducted weekly shooting meets on this land every Saturday and holiday from October through May. The shooting facilities and traps of the club are so arranged that portions of the shot fired at birds released during a meet, carry beyond the limits of the club property and fall on plaintiff's land, some 280 feet from the shooting stand. Plaintiff operates a farm on this property and employs four or five men to raise green stuffs for market. As a result of the shooting by the members of defendant club and their guests, some of plaintiff's produce has been damaged and rendered less marketable and his employes have been forced to seek shelter while the shooting was in progress.

There was no evidence adduced as to whether plaintiff's predecessors in title objected or agreed to the shooting over their land. However, it does appear that when plaintiff purchased his farm in 1934, he did not

know that defendant's shooting would interfere with his activities. Upon learning of it he immediately registered his complaint and eventually entered into a yearly lease with defendant from 1937 to 1946, whereby plaintiff, for a specified sum, granted to defendant the right to shoot over his land. Defendant sought thereafter to renew that lease but plaintiff refused. In spite of that, defendant continued holding its matches until enjoined by the court below.

The ancient rule that the owner of the land owns all of the air space over that land has been modified slightly by The Aeronautical Code of May 25, 1933, P. L. 1001, §401 so that it extends ". . . only so far as is necessary to the enjoyment of the use of the surface without interference . . ." That the passage of the shotgun pellets through the air over plaintiff's land does interfere with his enjoyment of his land cannot be questioned in view of the chancellor's findings which were approved by the court en banc and are amply supported by the evidence. It is equally apparent that defendant has acquired no right to shoot over and onto plaintiff's land since he has entered into possession. He has constantly complained of the trespasses except during the ten years when by lease he granted that privilege to defendant. It is defendant's contention, however, that because it has been so conducting shooting meets on this site uninterruptedly for over 21 years since 1895, it has granted as easement by prescription to shoot through the air onto plaintiff's land. Defendant has not called our attention to any cases which have decided that an easement of this nature may be obtained in this manner. But it, nevertheless, argues that the instant case is not distinguishable from any other in which this Court has held that the open, uninterrupted, notorious and adverse use of the property of another for 21 years resulted in an easement in that property.

We cannot agree with this contention of defendant. In addition to being adverse, the use must be visible and of such a nature and of such frequency as to give reasonable notice to the servient land owner that the right or easement is claimed against him: 1 Thompson Real Property, §378. As the learned chancellor so well said: "Under the facts of this case, we do not regard the use of the plaintiff's premises to have been so visible, open and notorious as to have put the prior owners of the plaintiff's premises upon notice of defendant's invasion thereof, adversely and under a claim of right. While the shots fired by the defendant's members and guests may have resounded through the air and been heard throughout the neighborhood or vicinity of the defendant's club, and served as notice to the neighbors of shooting upon its premises, there was nothing to indicate the direction in which these shots were being fired. Moreover, it was impossible for anyone to have seen in which direction they were fired, or whether they went over or onto the premises now owned by the plaintiff, unless the owner thereof was in the immediate vicinity at the time of the shooting, or upon that portion of his land when and where the shot pellets fell. Unlike the adverse use of rights of way, artificial water-courses, drains, eavesdrips, rainspouts discharging water on another's premises, and other similar visible, notorious and continuous uses of another's property, from which knowledge of such use could be readily inferred and imputed to the owners of the servient premises, there was no such visible and notorious use of the plaintiff's premises as to have put his predecessors in title on notice, so as to charge them with knowledge and acquiescence of the right and privilege claimed by the club members and guests to use such premises as a shooting range."

Defendant also contends that it has gained an easement by estoppel. This is grounded on the fact that

defendant expended considerable sums of money improving its premises between 1934 and 1947, including the erection of a twelve foot high fence. The latter was erected after defendant received a letter from plaintiff's counsel in 1947 in which he stated that he believed plaintiff would renew the lease if the fence were erected. Most of those improvements were made while the leases were operating and others were made in order to induce plaintiff to enter into a new lease in 1947. Those which were made prior to the first lease in 1937 were made at a time when plaintiff was protesting against defendant's shooting activities. Certainly then, it cannot be said that plaintiff stood by and allowed defendant to make the improvements in reliance on his inactivity. On the contrary, defendant knew or should have known that it was acting at the risk of having plaintiff refuse to renew its lease at any time.

As a matter of law defendant did not establish an easement by description to shoot over plaintiff's premises and as a matter of proof it failed to establish such an easement by estoppel. Accordingly an injunction was properly entered against it.

Decree affirmed; costs to be paid by defendant.