Argued March 11, affirmed July 29, petition for rehearing denied
November 18, 1959, certiorari denied, United States
Supreme Court March 29, 1960

## MARTIN ET UX v. REYNOLDS METALS COMPANY

342 P. 2d 790

*Fredric A. Yerke, Jr.,* Portland, argued the cause for appellant. With him on the brief were King, Miller, Anderson, Nash & Yerke, Portland; Clifford N. Carlsen, Jr., Portland; Gustav B. Margraf, Richmond, Virginia and W. Tobin Lennon, Richmond, Virginia.

*George W. Mead,* Portland, and *Irving Rand,* Portland, argued the cause for respondents.

Before McAllister, C. J., Lusk, Warner, Perry, Sloan, O'Connell and Millard, Justices.

O'CONNELL, J.

This is an action of trespass. The plaintiffs allege that during the period from August 22, 1951 to January 1, 1956 the defendant, in the operation of its aluminum reduction plant near Troutdale, Oregon caused certain fluoride compounds in the form of gases and particulates to become airborne and settle upon the plaintiffs' land rendering it unfit for raising livestock during that

period. Plaintiffs allege that their cattle were poisoned by ingesting the fluorides which contaminate the forage and water on their land. They sought damages in the amount of $450,000 for the loss of use of their land for grazing purposes and for the deterioration of the land through the growth of brush, trees and weeds resulting from the lack of use of the premises for grazing purposes. The plaintiffs also sought punitive damages in the amount of $30,000.

The plaintiffs and the defendant each moved for a directed verdict, whereupon the trial court found that the plaintiffs had suffered damage in the amount of $71,500 in the loss of use of their land and $20,000 for the deterioration of their land and entered judgment accordingly. The trial court rejected the plaintiffs' claim for punitive damages.

In the course of the pleadings the defendant raised the issue as to whether the complaint alleged a cause of action in trespass. The defendant contended that at most a cause of action in nuisance was stated. The trial court accepted the plaintiff's theory of the case. The principal assignments of error rest upon the defendant's contention that the trial court was mistaken in identifying the defendant's invasion of the plaintiffs' land as a trespass; that there was not sufficient evidence to establish a cause of action under any theory, but that if the court should find the evidence sufficient to give rise to liability the defendant's conduct constituted a nuisance and not a trespass.

Through appropriate pleadings the defendant set up the two-year statute of limitations applicable to nontrespassory injuries to land (ORS 12.110). If the defendant's conduct created a nuisance and not a trespass the defendant would be liable only for such damage as resulted from its conduct during a period of

two years immediately preceding the date upon which plaintiffs' action was instituted. On the other hand, if the defendant's conduct resulted in a trespass upon plaintiffs' land the six-year statute of limitations provided for in ORS 12.080 would be applicable and plaintiffs would be entitled to recover damages resulting from the trespasses by defendant during the period from August 22, 1951 to January 1, 1956.

The gist of the defendant's argument is as follows; a trespass arises only when there has been a "breaking and entering upon real property," constituting a direct, as distinguished from a consequential, invasion of the possessor's interest in land; and the settling upon the land of fluoride compounds consisting of gases, fumes and particulates is not sufficient to satisfy these requirements.

Before appraising the argument we shall first describe more particularly the physical and chemical nature of the substance which was deposited upon plaintiffs' land. In reducing alumina (the oxide of aluminum) to aluminum the alumina is subjected to an electrolytic process which causes the emanation of fluoridic compounds consisting principally of hydrogen fluoride, calcium fluoride, iron fluoride and silicon tetrafluoride. The individual particulates which form these chemical compounds are not visible to the naked eye. A part of them were captured by a fume collection system which was installed in November, 1950; the remainder became airborne and a part of the uncaptured particles eventually were deposited upon plaintiffs' land.

There is evidence to prove that during the period from August, 1951 to January, 1956 the emanation of fluorides from defendant's plant averaged approximately 800 pounds daily. Some of this discharge was

deposited upon the plaintiffs' land. There is sufficient evidence to support the trial court's finding that the quantity of fluorides deposited upon plaintiffs' land was great enough to cause $91,500 damage to the plaintiffs in the use of their land for grazing purposes and in the deterioration of their land as alleged.

We must determine, however, whether all or only a part of this damage may be shown; all, if the invasion constitutes a trespass, a part only (i.e., the damage which resulted within the two-year period of the statute of limitations) if the invasion was a nuisance and not a trespass.

■■ Trespass and private nuisance are separate fields of tort liability relating to actionable interference with the possession of land. They may be distinguished by comparing the interest invaded; an actionable invasion of a possessor's interest in the exclusive possession of land is a trespass; an actionable invasion of a possessor's interest in the use and enjoyment of his land is a nuisance. 4 Restatement, Torts 224, Intro. Note Chapter 40.

The same conduct on the part of a defendant may and often does result in the actionable invasion of both of these interests, in which case the choice between the two remedies is, in most cases, a matter of little consequence. Where the action is brought on the theory of nuisance alone the court ordinarily is not called upon to determine whether the conduct would also result in a trespassory invasion. In such cases the courts' treatment of the invasion solely in terms of the law of nuisance does not mean that the same conduct could not also be regarded as a trespass. Some of the cases relied upon by the defendant are of this type; cases in which the court holds that the interference with the plaintiff's possession through soot, dirt, smoke, cinders,

ashes and similar substances constitute a nuisance, but where the court does not discuss the applicability of the law of trespass to the same set of facts. *York v. Stallings,* 217 Or 13, 341 P2d 529; *Lindley v. Hyland,* 173 Or 93, 144 P2d 295 (1943); *Bourne v. Wilson-Case Lumber Co.,* 58 Or 48, 113 P 52 (1911); *Columbian Carbon Co. v. Tholen,* 199 SW2d 825 (1947) (Tex Civ App); *Weller v. Snoqualmie Falls Lumber Co.,* 155 Wash 526, 285 P 446 (1930); *Sterrett v. Northport Mining & Smelting Co.,* 30 Wash 164, 70 P 266 (1902).

However, there are cases which have held that the defendant's interference with plaintiff's possession resulting from the settling upon his land of effluents emanating from defendant's operations is exclusively nontrespassory. *Bartlett v. Grasselli Chemical Co.,* 92 W Va 445, 115 SE 451 (1922); *O'Neill v. San Pedro, L.A. & S.L.R. Co.,* 38 Utah 475, 114 P 127 (1911); *Thackery v. Union Portland Cement Co.,* 64 Utah 437, 231 P 813 (1924); see *Ryan v. City of Emmetsburg,* 232 Iowa 600, 4 NW2d 435 (1942). Although in such cases the separate particles which collectively cause the invasion are minute, the deposit of each of the particles constitutes a physical intrusion and, but for the size of the particle, would clearly give rise to an action of trespass. The defendant asks us to take account of the difference in size of the physical agency through which the intrusion occurs and relegate entirely to the field of nuisance law certain invasions which do not meet the dimensional test, whatever that is. In pressing this argument upon us the defendant must admit that there are cases which have held that a trespass results from the movement or deposit of rather small objects over or upon the surface of the possessor's land.

Thus it has been held that causing shot from a gun to fall upon the possessor's land is a trespass. *Munro*

*v. Williams, et al,* 94 Conn 377, 109 A 129 (pellets from an air gun fell upon land) ; *Peters v. Ambridge District Sportsmen's Assn.,* 14 Beaver 99 (Penn 1952) (shot from shotguns fell upon land) ; *DiGirolamo v. Philadelphia Gun Club,* 371 Pa 40, 89 A2d 357 (1952) (same) ; *Whittaker v. Stangvick et al.,* 100 Minn 386, 111 NW 295 (1907) (same) ; *Herrin v. Sutherland,* 74 Mont 587, 241 P 328 (1925) (shotgun shot passing over surface of land).

The dropping of particles of molten lead upon the plaintiff's land has been held to be a trespass. *Van Alstyne v. Rochester Telephone Corp.,* 163 Misc 258, 296 NY Supp 726. And the defendant was held liable in trespass where spray from a cooling tower on the roof of its theater fell upon the plaintiff's land. *B & R Luncheonette, Inc. v. Fairmont Theatre Corp.,* 278 App Div 133, 103 NY Supp2d 747.

The deposit of soot and carbon from defendant's mill upon plaintiff's land was held to be a trespass in *Young v. Fort Frances Pulp and Paper Co.,* 17 Ont Wkly Notes 6 (Canada 1919).

And liability on the theory of trespass has been recognized where the harm was produced by the vibration of the soil or by the concussion of the air which, of course, is nothing more than the movement of molecules one against the other. *McNeill v. Redington,* 67 Cal App2d 315, 154 P2d 428 (1945). Liability on this basis was clearly recognized in *Bedell, et ux v. Goulter, et al,* 199 Or 344, 361, 261 P2d 842 (1953) where Justice LUSK, after discussing the rule of *Rylands v. Fletcher,* LR 3 H L 330, continued with the following observation:

"* * * And there is slight difficulty in holding that one who engages in blasting operations which set in motion vibrations and concussions of the earth

and air which reach to another's land—no matter how far distant—and shatter his dwelling, commits a trespass no less than one who accomplishes the same result by the propulsion of rocks or other material. *Parcell v. United States*, [104 F Supp 110]; *Bluhm v. Blanck & Gargaro*, [62 Oh App 451, 24 NE2d 615]; 22 Am Jur 180, Explosions and Explosives, § 54. 'Is not a concussion of the air, and jarring, breaking, and cracking the ground with such force as to wreck the buildings thereon, as much an invasion of the rights of the owner as the hurling of a missile thereon?' *Louden v. City of Cincinnati*, [90 Oh St 144, 106 NE 970, LRA 1915E 356, Ann Cas 1916C 1171]."

The view recognizing a trespassory invasion where there is no "thing" which can be seen with the naked eye undoubtedly runs counter to the definition of trespass expressed in some quarters. 1 Restatement, Torts § 158, Comment h (1934); Prosser, Torts § 13 (2d Ed 1955). It is quite possible that in an earlier day when science had not yet peered into the molecular and atomic world of small particles, the courts could not fit an invasion through unseen physical instrumentalities into the requirement that a trespass can result only from a *direct* invasion. But in this atomic age even the uneducated know the great and awful force contained in the atom and what it can do to a man's property if it is released. In fact, the now famous equation $E = mc^2$ has taught us that mass and energy are equivalents and that our concept of "things" must be reframed. If these observations on science in relation to the law of trespass should appear theoretical and unreal in the abstract, they become very practical and real to the possessor of land when the unseen force cracks the foundation of his house. The force is just as real if it is chemical in nature and must be awakened

by the intervention of another agency before it does harm.

If, then, we must look to the character of the instrumentality which is used in making an intrusion upon another's land we prefer to emphasize the object's energy or force rather than its size. Viewed in this way we may define trespass as any intrusion which invades the possessor's protected interest in exclusive possession, whether that intrusion is by visible or invisible pieces of matter or by energy which can be measured only by the mathematical language of the physicist.

■ We are of the opinion, therefore, that the intrusion of the fluoride particulates in the present case constituted a trespass.

The defendant argues that our decision in *Amphitheaters, Inc. v. Portland Meadows*, 184 Or 336, 198 P2d 847 (1948) requires a contrary conclusion. In discussing the distinction between trespass and nuisance the court referred to a difference between "a cannon ball and a ray of light" indicating that the former but not the latter could produce a trespassory invasion. The court also said "The mere suggestion that the casting of light upon the premises of a plaintiff would render a defendant liable without proof of any actual damage, carries its own refutation." 184 Or 336, 343. We do not regard this statement as a pronouncement that a trespass can *never* be caused by the intrusion of light rays or other intangible forces; more properly the case may be interpreted as stating that the conduct of the defendant in a particular case may not be actionable if it does not violate a legally protected interest of the plaintiff. The court states that the defendant is not liable *without proof of actual damage.* In that case the plaintiff contended that he had suffered dam-

age in the form of a less efficient cinema screen due to the defendant's lights. In denying recovery the court found that there was no damage, apparently because whatever harm the plaintiff suffered was damnum absque injuria.

In every case in which trespass is alleged the court is presented with a problem of deciding whether the defendant's intrusion has violated a legally protected interest of the plaintiff. In most cases the defendant's conduct so clearly invades the well established possessory interest of the plaintiff that no discussion of the point is called for. But where neither the defendant's conduct nor the plaintiff's use fall within the familiar trespass pattern of the past the courts are faced with a preliminary inquiry as to whether the plaintiff has a protectible interest under the law of trespass. This in turn calls for the inquiry as to whether the defendant's conduct was such as to constitute an invasion of that interest.

In some cases the solution can be based upon the ground that the defendant's conduct is not substantial enough to be regarded as a trespassory intrusion. Thus, the casting of a candle beam upon the screen of a drive-in theater would not constitute an actionable invasion, simply because the intrusion is so trifling that the law will not consider it and the principle de minimis non curat lex is applicable. In some cases the solution may be arrived at by admitting that the intrusion is substantial but refusing to recognize that plaintiff has a legally protected interest in the particular possessory use as against the particular conduct of the defendant. And so the glare of flood lights upon an adjoining owner's cinema screen, as in the Amphitheater case, may not be a trespass, not because the intrusion is trifling, but because the law does not wish to protect

such a use from an invasion, whether the cause of the interference be viewed as a physical intrusion or as a nontrespassory act and covered by the law of nuisance.

The Amphitheaters case can be explained in terms of this latter point of view, i.e., that the glare of defendant's lights could be regarded as an intrusion within the law of trespass, but that the plaintiff had no right to treat the intrusion as actionable in view of the nature of plaintiff's use and the manner in which the defendant interfered with it. Had the defendant purposely, and not as an incidence of his own legitimate use, directed the rays of light against the plaintiff's screen the court might well have taken the position that the plaintiff could have recovered in a trespass action. These illustrations demonstrate that the tort of trespass involves a weighing process, similar to that involved in the law of nuisance, although to a more limited extent than in nuisance and for a different purpose, i.e., in the one case to define the possessor's interest in exclusive possession, and in the other to define the possessor's interest in use and enjoyment.

As stated earlier, normally no inquiry is made in the trespass cases as to whether the plaintiff's interest in making a particular use of his property is within the protection provided for under the law of trespass, because traditionally the interest has been regarded as one clearly entitled to protection in the trespass field. There are adjudicated cases which have refused to find a trespass where the intrusion is clearly established but where the court has felt that the possessor's interest should not be protected. Thus it has been held that the flight of aircraft over the surface of plaintiff's land does not constitute a trespass unless the intrusion interferes with the present enjoyment of property. *Hinman v. Pacific Air Transport*, 84 F2d 755 (9th Cir.

1936). The same result would seem to follow if the intrusion interfered with the present use of the land but where such use was not entitled to legal protection as against the socially desirable conduct of the defendant. Here it is apparent that the law of trespass and the law of nuisance come very close to merging. This is so because when inquiry is made as to whether the plaintiff's interest falls within the ambit of trespass law the courts look at the interference with the plaintiff's *use and enjoyment* of his land to determine whether his interest in *exclusive possession* should be protected and thus the two torts coalesce.

The Amphitheater case may also be viewed as a pronouncement that a possessor's interest is not invaded by an intrusion which is so trifling that it cannot be recognized by the law. Inasmuch as it is not necessary to prove actual damage in trespass the magnitude of the intrusion ordinarily would not be of any consequence. But there is a point where the entry is so lacking in substance that the law will refuse to recognize it, applying the maxim de minimis non curat lex. Thus it would seem clear that ordinarily the casting of a grain of sand upon another's land would not be a trespass. And so too the casting of diffused light rays upon another's land would not ordinarily constitute a trespass. Conceivably such rays could be so concentrated that their entry upon the possessor's land would result in a trespassory invasion. An appropriate illustration is found in *Watson v. Mississippi River Power Co.*, 174 Iowa 23, 32, 156 NW 188, 191 (1916) where the court said:

"* * * If, for example, a person interests himself in solar phenomena, and, while experimenting with a powerful sunglass, he accidentally focuses the instrument upon some inflammable material on the lot of his nextdoor neighbor, starting a blaze

which results in injury and loss to the latter, can it be said there was no trespass, no actual invasion of the neighbor's premises?"

But where the light is cast upon the plaintiff's premises in a manner which does no actual damage or causes no interference in any way with a legitimate use of the premises then there is no reason for recognizing an invasion of the plaintiff's possessory interest. Note 62 Harv L Rev 704 (1949). Here again it is important to point out that the tort of trespass is composed of components which include the character (including the magnitude) of the defendant's conduct in causing an intrusion and the character (including the magnitude) of the harm visited on the plaintiff in interfering with his interest in the exclusive possession of the premises. Consequently the question as to whether a ray of light or any other intrusion is so unsubstantial that it is to be disregarded under the de minimis principle cannot be looked at solely from the standpoint of the defendant's conduct, but it must be evaluated with reference to the nature of the plaintiff's interest. The broader and more diverse the possessor's protectible interests the more sensitive they are to violation by the defendant and the easier it is to find that his conduct, although apparently inconsequential, gives rise to liability. The scope of the possessor's legitimate interest in the exclusive possession of land is broad and difficult to define specifically. Once recognizing that actual damage need not be shown in making out an actionable invasion, the plaintiff's right to insist upon freedom from interference with his possession seems almost limitless.

But there are limits and they can be found, if only vaguely, in the reasons for protecting the possessory interest of the landholder where no actual damage is

suffered. It is sometimes said that the plaintiff is permitted to recover in order to prevent a loss of interest by the running of the statute of limitations. 1 Harper & James, Torts, § 1.8, p 25 and 26; *Whittaker v. Stangvick*, supra; *Bragg v. Laraway*, 65 Vt 673, 27 A 492 (1893). But this is not a respectable reason because the statute could be made inapplicable by holding that no cause of action arose for the harmless invasion. The modern law of trespass can be understood only as it is seen against its historical background. Originally all types of trespass, including trespass to land, were punishable under the criminal law because the trespasser's conduct was regarded as a breach of the peace. When the criminal and civil aspect of trespass were separated, the civil action for trespass was colored by its past, and the idea that the peace of the community was put in danger by the trespasser's conduct influenced the courts' ideas of the character of the tort. Therefore, relief was granted to the plaintiff where he was not actually damaged, partly at least as a means of discouraging disruptive influences in the community. Winfield on Torts (4th ed) p 305 expresses the idea as follows:

> "The law, on the face of it, looks harsh, but trespass was so likely in earlier times to lead to a breach of the peace that even unwitting and trivial deviations on to another person's land were reckoned unlawful. At the present day there is, of course, much greater respect for the law in general and appreciation of the security which it affords, and the theoretical severity of the rules as to land trespass is hardly ever exploited in practice."

The idea is similarly expressed in 1 Harper & James, Torts, § 1.8, p 25:

> "In the early law, emphasis was placed upon the criminal aspect of willful trespasses, as a breach of

> the peace or a wrong to the state. Compensation to the injured victim was regarded as of secondary importance. It came about, therefore, that the rule developed that the plaintiff might recover nominal damages even though he sustained no actual pecuniary loss as a result of the trespass."

If then, we find that an act on the part of the defendant in interfering with the plaintiff's possession, does, or is likely to result in arousing conflict between them, that act will characterize the tort as a trespass, assuming of course that the other elements of the tort are made out. The importance of this consideration in describing a trespass to land is evident in many of the modern cases. *Fincannon v. Sudderth*, 144 N C 587, 57 SE 337 (1907); *Bragg v. Laraway*, supra; *Whittaker v. Stangvick*, supra.

Probably the most important factor which describes the nature of the interest protected under the law of trespass is nothing more than a feeling which a possessor has with respect to land which he holds. It is a sense of ownership; a feeling that what one owns or possesses should not be interfered with, and that it is entitled to protection through law. This being the nature of the plaintiff's interest, it is understandable why actual damage is not an essential ingredient in the law of trespass. As pointed out in 1 Harper & James, Torts, § 1.8, p 26, the rule permitting recovery in spite of the absence of actual damages "is probably justified as a vindictatory right to protect the possessor's proprietary or dignitary interest in his land."

We think that a possessor's interest in land as defined by the considerations recited above may, under the appropriate circumstances, be violated by a ray of light, by an atomic particle, or by a particulate of fluoride and, contrariwise, if such interest circum-

scribed by these considerations is not violated or endangered, the defendant's conduct, even though it may result in a physical intrusion, will not render him liable in an action of trespass. *Amphitheaters, Inc. v. Portland Meadows*, supra.

We hold that the defendant's conduct in causing chemical substances to be deposited upon the plaintiffs' land fulfilled all of the requirements under the law of trespass.

■ The defendant contends that trespass will not lie in this case because the injury was indirect and consequential and that the requirement that the injury must be direct and immediate to constitute a trespass was not met. We have held that the deposit of the particulates upon the plaintiff's land was an intrusion within the definition of trespass. That intrusion was direct. The damages which flowed from it are consequential, but it is well established that such consequential damage may be proven in an action of trespass. *Van Alstyne v. Rochester Telephone Corp.*, supra; 1 Restatement, Torts, § 163; Prosser, Torts (2d ed) p 57. The distinction between direct and indirect invasions where there has been a physical intrusion upon the plaintiff's land has been abandoned by some courts. See Prosser, Torts (2d ed) p 56; 1 Restatement, Torts, § 158, Comment h. Since the invasion in the instant case was direct it is not necessary for us to decide whether the distinction is recognized in this state.

■ The trial court found that the fluoride compounds emitted from the defendant's plant between August 22, 1951 and January 1, 1956 rendered plaintiffs' land and the drinking water on the land unfit for consumption by livestock grazing thereon. The defendant contends that there is no substantial evidence to support this finding. In support of this contention the

defendant points to the effectiveness of the fume control system which was installed in 1950 prior to August 22, 1951, the beginning of the period during which the plaintiffs alleged that the damage occurred. The evidence is conflicting but there is substantial evidence from which the trial court could have connected the emanation of the fluorides with the damage alleged. We cannot, therefore, disturb the trial court's finding.

It is also urged that the trial court erred in failing to enter a special finding requested by the defendant. The requested finding in effect stated that it was impossible in the operation of an aluminum reduction plant to capture all fluorides which are created in the manufacturing process; that the fume collection system was in operation during the period in question; and that it was the most efficient of the systems known in aluminum reduction plants in the United States.

■ It is argued that since the trial court elected to enter special rather than general findings it was required by ORS 17.430 to enter findings on all material issues which, it is claimed, would include the issue defined in the requested findings. The complaint alleged that the defendant "carelessly, wantonly and willfully continuously caused to be emitted," from its plant the poisonous compounds. This allegation was denied in the defendant's answer. The issue thus raised, as to the character of defendant's conduct in making the intrusion upon plaintiffs' land, would be material only with respect to the claim for punitive damages which, as we have already indicated, was rejected by the trial court. Since we hold that the intrusion in this case constituted a trespass it is immaterial whether the defendant's conduct was careless, wanton and willful or entirely free from fault. Therefore, the refusal to enter the requested finding is not error.

The judgment of the lower court is affirmed.

McALLISTER, C.J., specially concurring.

I concur in the result of the above opinion but dissent from that portion thereof that attempts to reconcile the holding in this case with the holding in the case of *Amphitheaters, Inc. v. Portland Meadows*, 184 Or 336, 198 P2d 847.