**Patrick J. McCORMICK, II, Plaintiff,**

v.

**CAMP POCONO RIDGE, INC. II, and
Thomas Santay, Defendants.**

**No. 3:CV–88–1194.**

United States District Court,
M.D. Pennsylvania.

Dec. 20, 1991.

Thomas I. Vanaskie, Scranton, Pa., for plaintiff.

Paul A. Barrett, O'Malley, Harris & Schneider, P.C., Scranton, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

## I. BACKGROUND

This action involves a dispute over the rights and liabilities of the parties relating to the ownership of land within the Wallenpaupack Preserve, Greene Township, Pike County, Pennsylvania. Plaintiff Patrick J. McCormick II initiated this action by filing a complaint on August 5, 1988. By Order dated September 7, 1988, the Honorable William J. Nealon granted plaintiff's request for a temporary restraining order restraining the defendants from "prohibiting access to plaintiff to cross over, use, and enjoy the roads and lanes and other common areas in and about the Wallenpaupack Preserve". On December 29, 1989, defendants Camp Pocono Ridge, Inc. II

---

(Camp II) and Thomas Santay filed an amended answer and counterclaim to McCormick's complaint.

The defendants filed a motion for partial summary judgment on November 21, 1990. On that same date, the plaintiff filed a motion seeking summary judgment on the defendants' amended counterclaim. On April 11, 1991, this court issued an order granting partial summary judgment in favor of the defendants and against the plaintiff with respect to the intentional infliction of emotional distress claim asserted in Count V of the complaint. 760 F.Supp. 1113. That order also stayed this action, because on the record before the court, plaintiff was not clearly established as the legal title-holder to Lot No. 6 and, therefore, may have lacked standing to bring claims related to the property. Plaintiff was given ninety days to establish legal ownership of the property. On July 11, 1991, plaintiff submitted to this court documentation which evidenced, to the court's satisfaction, plaintiff's legal ownership to Lot No. 6. The court will now consider the remaining issues of the parties' motions for summary judgment.

## II. RELEVANT FACTS

William H. Hough, Jr. established the Wallenpaupack Preserve in the 1920's. Hough and his wife Helen were the common grantors of all lands within the Preserve, including Lot No. 6, which was purchased by the plaintiff's family in 1936.[1] The chain of title to Lot No. 6, as set forth in plaintiff's brief in support of his motion for summary judgment,[2] is as follows:

1. August 31, 1927—William H. Hough, Jr. and Helen E. Hough, his wife, to Charles D. Bartholomew.

2. December 9, 1930—Bartholomew to Robert E. Lamberton.

---

1. Since the time the McCormick family first obtained the title to Lot No. 6 the property has served as a family gathering place for major holidays and vacations.

2. Plaintiff cites the office of the Recorder of Deeds in and for Pike County as the source of

---

the information concerning the chain of title to Lot No. 6. The Wallenpaupack Preserve was "established" only by reference in the deeds from the Houghs; no plot plan was ever placed on record.

3. November 13, 1936—Lamberton to L.W. and Elizabeth F. McCormick, plaintiff's parents.

4. November 24, 1964—L.W. and Elizabeth F. McCormick to Patrick J. McCormick.

5. January 19, 1967—Patrick J. and Joan R. McCormick to Elizabeth F. McCormick.

6. September 1, 1967—Elizabeth F. and L.W. McCormick to E.L.P. Corporation.

E.L.P. Corporation ("E.L.P.") was a closed corporation and its four shares of issued and outstanding stock were owned by the plaintiff, his brother Leo McCormick and his mother Elizabeth McCormick.[3] Plaintiff's mother died on November 9, 1975 and E.L.P.'s corporate charter became void and inoperative on March 1, 1981 due to non-payment of franchise taxes.[4] On January 1, 1981, plaintiff acquired any and all interest his brother held in E.L.P.

In approximately 1935 or 1936, Russell Low purchased Henry and Helen Hough's remaining interest in the Wallenpaupack Preserve. Lots within the Preserve that were individually owned, including Lot No. 6, were not affected by this transfer of ownership. In 1957, Samuel Santay, the father of defendant Thomas Santay, and Yale Newman acquired Low's interest in the Preserve and converted the property into a youth summer camp. Santay and Newman conveyed their interest in the property to Camp Pocono Ridge, Inc. on October 8, 1965. Twenty-two years later, on October 6, 1987, Camp Pocono Ridge, Inc. conveyed its interest in the Preserve to Camp II. The shares of Camp II are owned exclusively by the defendant Thomas Santay, his wife Edna, and Mel and Jane Wolynez.

The original Hough to Bartholomew deed contains the following relevant restrictions:

UNDER AND SUBJECT to the following restrictions and limitations which are hereby agreed to and accepted by the said grantee, for himself, his heirs and assigns, as covenants running with the land ...

FIFTH: That if at any time in the future said grantee shall desire to sell said property or any portion thereof, he shall first give to the said grantors, their heirs and assigns, an option to purchase the same at its full market value, and only in the event of the failure or refusal of the said grantors, their heirs and assigns, to exercise said option within a reasonable time after notice of such intended sale and the name and address of the intended purchasers, have been given to him or them, shall any conveyance or sale be made to any third person.

SIXTH: That said restrictions and limitations are intended for the benefit and protection of all the purchasers of any parts or portions of the land conveyed to the said William H. Hough, Jr., by said Homer L. Gilpin and wife as hereinabove recited, and they are made solely for the preservation of said land for recreation and residential purposes only and are so understood by the grantee.

The deed also conveys to the grantee "the free and common use, right and privilege of all roads and lanes in, upon and about said Wallen Paupac Preserve as passage ways in common with all the other owners and occupiers of land in said Preserve at all times hereafter forever."

The plaintiff and his family have always considered the parcel of land which is immediately adjacent to their property as a "common area". This parcel is bordered by Lot No. 6; Allen Lane, the main access road leading through the Preserve; and two lots, which like Lot No. 6, are individually owned. In addition, the McCormicks have also used other areas within the Preserve which the defendants claim are not common "roads and lanes" as stated in the original deed. It is these so-called "com-

---

**3.** Elizabeth McCormick held two shares of E.L.P. stock while plaintiff and his brother held one each.

**4.** It is unknown whether Elizabeth McCormick died testate or intestate. Leo W. McCormick,

Sr., plaintiff's father, died July 18, 1978. His will provided that, in the event of his wife's prior death, all of his property should be given, devised and bequeathed to his sons, Leo McCormick, Jr. and plaintiff, equally.

mon areas" which are the focal point of this dispute.

In the summer of 1988, Thomas Santay caused the plaintiff's daughter-in-law to be issued a citation by the Pennsylvania State Police for criminal trespass for being in an area of the Preserve owned by Camp II, a section of the Preserve which the McCormicks have always considered part of the "common area". As a result of this incident, plaintiff filed the instant action to protect what he believes is his right to use the common areas of the preserve.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in a light most favorable to the non-moving party. *Continental Insurance v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). If there is no genuine issue of material fact, summary judgment may be granted to the party entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a plaintiff may not merely restate the allegations of his complaint. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a plaintiff rely on self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett*, supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. A plaintiff must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the plaintiff fails to provide such evidence, then he is not entitled to a trial and the defendant is entitled to summary

judgment as a matter of law. Fed.R.Civ.P. 56(e).

## IV. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. *Easement by Prescription.*

■ In Count III of the complaint plaintiff alleges that he and his predecessors in title "have been in actual, exclusive, open, notorious, and adverse use for a continuous period in excess of 21 years" of a parcel of land immediately adjacent to Lot No. 6. Plaintiff also alleges that he and other property owners have used this land as a nature preserve and that he has acquired the right to cross-over, use and enjoy the adjacent parcel. Although not specifically stated in the complaint, this is a claim to an easement by prescription over the adjacent parcel.

■ An easement by prescription arises by adverse, open, continuous, notorious and uninterrupted use of land for a period of twenty-one years. *Bodman v. Bodman*, 456 Pa. 412, 414, 321 A.2d 910 (1974); *Waltimyer v. Smith*, 383 Pa.Super. 291, 294, 556 A.2d 912, 913 (1989); *Burkett v. Smyder*, 369 Pa.Super. 519, 522, 535 A.2d 671, 673 (1988); *Walley v. Iraca*, 360 Pa.Super. 436, 441, 520 A.2d 886, 889 (1987). Necessity is not a requirement to the establishment of a prescriptive easement. *Boyd v. Teeple*, 460 Pa. 91, 94, 331 A.2d 433, 434 (1975). A landowner may "tack" the period of use by his predecessor in title onto his own period in order to establish continuous possession for the required twenty-one years. *Lednak v. Swatsworth*, 33 D & C.3d 535, 537–538 (1984). "Tacking" is only permissible, however, where privity exists between the adverse possessors by the sale of the property by each owner to his successor. *Id.* Finally, in order to establish continuous possession, the adverse possessor need not illustrate constant use, and instead, may establish continuity by a settled course of conduct which shows an attitude of mind on the part of the user or users that the use is the exercise of a property right. *Burkett v. Smyder*, supra, 369 Pa.Super. at 522, 535 A.2d at 673.

■ The defendants argue that the plaintiff cannot establish an easement by prescription over the adjacent parcel because the land is unenclosed woodland. Indeed, under Pennsylvania law a right-of-way may not be acquired by prescription through unenclosed woodland. Act of General Assembly of April 25, 1850, P.L. 569, § 21, 68 P.S. § 411; See *Humberston v. Humbert,* 267 Pa.Super. 518, 407 A.2d 31 (1979) (this section prohibits the acquisition of a prescriptive easement over unenclosed woodland). The defendants cite the plaintiff's deposition in support of the proposition that the adjacent parcel is in fact unenclosed woodland. Plaintiff admits that the parcel is wooded and that it is not enclosed by a fence. However, he argues that the parcel is enclosed by Lot No. 6, Allen Lane, and two other lots. He argues further that the parcel is completely surrounded and enclosed by the Wallenpaupack Preserve. These arguments lack merit.

68 P.S. § 411 states:

No right of way shall be hereafter acquired by user, where such way passes through uninclosed woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure.

It is beyond question that the words "uninclosed woodland"[5] in this statute refer to a wooded area which is not enclosed by a fence or some other barrier.[6] Since every wooded area is necessarily bordered or surrounded by other areas, if this court were to accept plaintiff's argument, no woodland in existence would be unenclosed for the purpose of the statute.

Consequently, plaintiff's claim to a prescriptive easement over the adjacent parcel is barred under Pennsylvania law, and judgment will be entered in favor of the defendants and against the plaintiff as to Count III of the complaint.

*B. Easement by Estoppel.*

■ In Count IV of the complaint plaintiff alleges that he "has relied to his detriment on the defendants' affirmative assurances and/or failure to object to plaintiff's continued use of the roads, lanes and other common areas" of the Preserve. Plaintiff claims that due to his reliance upon the actions and/or inactions of defendants, and the defendants' predecessors in title, he has acquired an easement by estoppel to cross over, use and enjoy the roads, lanes and other common areas of the Preserve.

Initially, it is important to ascertain exactly what land is the subject of the dispute in this count. The deed conveyed to the plaintiff, as well as the other lot owners, "the free and common use, right and privilege of all roads and lanes in, upon and about said Wallen Paupac Preserve as passage ways in common with all the other owners and occupiers of land in said Preserve at all times hereafter forever." The import of this language is clear. It conveys to plaintiff an easement by grant over the roads and lanes of the Preserve to be used as passage ways in common with the other owners. This right is not disputed by the parties. However, in addition to the roads and lanes which provide access to the lots within the Preserve, plaintiff claims to have acquired an easement by estoppel over the "common areas" of the Preserve. Although not specifically stated in the complaint, the parties have indicated that these common areas refer to walking paths and other various areas of the defendants' property utilized by the youth summer camp.

Once again, it is the plaintiff's contention that he has obtained an easement by estoppel over these common areas located on the defendants' land by virtue of his detrimental reliance upon the defendants' affirmative assurances and failure to object to his continued use of these common areas.

---

**5.** The statute, enacted in 1850, uses the spelling "uninclosed." Both "uninclosed" and "unenclosed" appear to be acceptable alternative spellings. *The Random House Dictionary,* Unabridged (2d ed. 1987). The court will use "unenclosed" except when quoting the statute.

**6.** The second, and most applicable, definition of "enclose" appearing in *The Random House Dictionary, supra,* at page 640, is "to surround, as with a fence or wall: to *enclose land.*"

Apparently, although extraordinarily rare, an easement may arise by estoppel in this Commonwealth. See *DiGirolamo v. Philadelphia Gun Club*, 371 Pa. 40, 89 A.2d 357 (1952) (court considered and rejected defendant's claim to an easement by estoppel); *Schon v. Stanley*, 6 Lycoming 201 (Pa.Com.Pl.1958). It is hornbook law that any estoppel claim requires detrimental reliance on the part of the claimant. Indeed, in the instant case, plaintiff has pled detrimental reliance. Specifically, plaintiff pleads as detrimental reliance the acquisition of sole ownership of Lot No. 6, and the investment of substantial amounts of time and money into the improvements located on the property. The court, however, fails to recognize any detriment to plaintiff. Simply put, plaintiff has not been damaged by his reliance. While he may not have acquired sole ownership of the property and improved the premises had he known defendants would revoke their permission to traverse their property, his actions did not result in the loss of any money. Plaintiff did not spend money on the improvement of the common areas. On the contrary, he only spent money on the acquisition and improvement of his own property, Lot No. 6. The time and money spent on these improvements will be recovered by plaintiff upon the sale of the property, if it is ever sold. Consequently, plaintiff has not suffered a legally cognizable injury.

■ Moreover, in all likelihood these common areas are unenclosed woodlands and plaintiff's acquisition of these areas by way of equitable estoppel would be prohibited by 68 P.S. § 411.

In summary, defendants' motion for partial summary judgment will be granted as to Count III of plaintiff's complaint which asserted an easement by prescription over the parcel adjacent to Lot No. 6, and also as to Count IV, which asserted an easement by equitable estoppel to use "roads, lanes and other common areas" of the Preserve.

7. Although the deed designates this an option to

## V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A. *Right of First Refusal—Alleged Violation.*

■ As stated above, defendants have filed a counterclaim complaint against the plaintiff. The defendants claim that the sale of Lot No. 6 by Elizabeth F. and L.W. McCormick to E.L.P. Corporation on September 1, 1967, violated the right of first refusal[7] contained in the deed. Specifically, the deed provided

FIFTH: That if at any time in the future said grantee shall desire to sell said property or any portion thereof, he shall first give to the said grantors, their heirs and assigns, an option to purchase the same at its full market value, and only in the event of the failure or refusal of the said grantors, their heirs and assigns, to exercise said option within a reasonable time after notice of such intended sale and the name and address of the intended purchasers, have been given to him or them, shall any conveyance or sale be made to any third person.

Defendants allege that their predecessor in title was not notified of the intended sale to E.L.P. as required by the deed, and request that the court hold the sale in violation of the terms and conditions of the deed and permanently enjoin the plaintiff from selling the property except in strict conformance with the restrictions and limitations contained in the deed.

Significantly, none of the parties involved in the 1967 transaction is a party to this case. In fact, the parties are no longer in existence. Elizabeth F. and L.W. McCormick are deceased and E.L.P. Corporation's charter has been voided. In addition, the assignee of the grantor in 1967, Camp Pocono Ridge, Inc., the predecessor of defendant Camp II, was operated by defendant Thomas Santay's deceased father. Plaintiff argues that despite the defendants' allegation that no notice was given prior to this sale in 1967, there simply is no proof to support this allegation. The court is compelled to agree.

■ In response to a motion for summary judgment, a plaintiff cannot rely on

purchase, it is clearly a right of first refusal.

self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett,* supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. The plaintiff must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the plaintiff fails to provide such evidence, then he is not entitled to a trial and the defendant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e). Since all the parties involved in the 1967 transaction are deceased and the defendants/counterclaim plaintiffs have not come forth with any proof whatsoever as to the McCormick's non-compliance with the notice provision, the plaintiff/counterclaim defendant is entitled to summary judgment on this claim.[8]

■ Therefore, the only claim remaining is the request to enjoin permanently the plaintiff from selling or conveying the property in violation of the right of first refusal provisions in the Hough to Bartholomew deed. As defendants have provided no evidence that plaintiff or any of his predecessors in ownership has at any time violated the right of first refusal provisions in the deed, there is no equitable basis for the court to enter a decree enjoining potential future violations.

### B. *Right of First Refusal—Rule Against Perpetuities.*

■ Plaintiff argues that the right of first refusal contained in the deed violates the Rule Against Perpetuities. Under the common law, the Rule Against Perpetuities prohibited the creation of future interests in land which might not vest within the lives in being at the time of its creation plus twenty-one years. This Commonwealth has statutorily modified the rule mandating that "the common law rule against perpetuities be measured by *actual rather than possible events.*" 20 Pa. C.S.A. § 6104(b). This rule is applicable to all future interests regardless of when they were created. 20 Pa.C.S.A. § 6104(d).

Accordingly, since the Commonwealth has adopted the wait-and-see approach, the first question that must be asked is whether any of the parties to the original deed is still living. Since they are all deceased, the next question is whether twenty-one years has passed since the most recent death. The defendants have submitted the death certificate of Helen Hough, one of the original grantors, indicating that she died on December 19, 1978. Since only thirteen years have passed since the death of one of the lives in being at the time the interest was created, the Rule Against Perpetuities is inapplicable at this time.

### C. *Right of First Refusal—Unreasonable Restraint on Alienation.*

■ Plaintiff argues that the right of first refusal contained in the deed constitutes an impermissible restraint on alienation because "it purports to grant the optionee, his heirs and assigns, the right to purchase Lot. No. 6 *at its fair market value,* regardless of what price the prospective purchaser may be willing to pay." The court disagrees. Fair market value is

> The amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts. By fair market value is meant the price in cash, or its equivalent, that the property would have brought at the time of taking, considering its highest and most profitable use, if then offered for sale in the open market, in competition with other similar properties at or near the location of the property taken, with a reasonable time allotted to find a purchaser.... Fair market value is the price that the asset would bring by bona fide bargaining between well-informed buyers and sellers at the date of acquisition.... The amount of money which purchaser who is willing but not obligated to buy would pay owner who is willing but not obligated to sell, taking into consideration all uses to which land is adapted and might in reason be applied.

Black's Law Dictionary 597 (6th ed. 1990). By definition, the fair market value of Lot

---

8. Since neither the defendants nor the plaintiff were involved in the 1967 transaction, there also appears to be a serious issue as to the justiciability of this claim.

No. 6 could not be less than the amount offered by a prospective purchaser.

 Furthermore, the deed provides that the "grantee ... shall first give to the said grantors, their heirs and assigns, an option to purchase the same at its *full market value*." (emphasis added). Although the "full" and "fair" market value should be the same amount, the use of the term "full market value" in the context of a right of first refusal manifests an intention to pay the lot owner the same amount offered by the intended purchaser.

Moreover, the treatises on the law of future interests are consistent with this court's determination that the right of first refusal contained in the instant deed does not constitute an unreasonable restraint on alienation.

Suppose A conveys land to B in fee on the express condition that if B desires to sell he must first offer the land to A at the lowest price he is willing to accept from any other vendee. Or suppose the condition is that, if B desires to sell he must first offer the property to A at a fixed price, or at a price which is a percentage of, or lower than, he is willing to accept from anyone else. In the second case, it may be said that this is merely a qualified forfeiture restraint on a fee simple and should be held void.... On the other hand, in the first case, where the restraint is to the effect that the grantee will first offer the property to the grantor at the lowest price which he will accept from anyone else, it would seem that marketability is not, in fact, restrained at all. The owner can sell to his grantor or to anyone else in the world at any price which he desires. The only restriction is that he cannot prefer any other vendee over his grantor. But it is difficult to see how that restriction in any true sense limits the practical alienability of the land. Hence, the American Law Institute has said that such a restraint is valid. Of course, as the Restatement indicates, the restraint would have to comply with the rule against perpetuities.

Lewis M. Simes, Law of Future Interests § 114, at 243–4 (2d ed. 1966); accord Simes and Smith, Law of Future Interests § 1154 (2d ed. 1956). See *Alexy v. Kennedy House, Inc.*, 507 F.Supp. 690 (E.D.Pa.1981) (court held that membership agreement for cooperative apartment house entitling members to an apartment and requiring the members, upon termination of their occupancy, to sell the membership to the cooperative at a price to be fixed when the option is exercised according to a formula which did not provide for inflation did not constitute an unreasonable restraint on alienation).

In summary, therefore, plaintiff's motion for summary judgment as to defendants' counterclaim complaint is granted, and the counterclaim will be dismissed. The right of first refusal is not an impermissible restraint on alienation and does not as yet violate the Rule Against Perpetuities, but defendants have provided no evidence of its violation. Defendants have also established no basis at this time for the court to enjoin possible future violations of the right of first refusal.