**REYNOLDS METALS COMPANY, a corporation, Appellant,**

v.

**Paul MARTIN and Verla Martin, husband and wife, Appellees.**

No. 19126.

United States Court of Appeals
Ninth Circuit.

Oct. 20, 1964.

Fredric A. Yerke, Jr., Jean P. Lowman, H. C. Barragan, King, Miller, Anderson, Nash & Yerke, Portland, Or., Gustav B. Margraf, W. Tobin Lennon, Richmond, Va., for appellant.

Nels Peterson, Peterson, Lent & Paulson, Portland, Or., Frederick A. Cone, Belli, Ashe & Gerry, San Francisco, Cal., for appellees.

Before HAMLEY, MERRILL and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

This is an appeal from an order, and a supplemental order, denying defendant's motion to dismiss this action. This court has heretofore granted defendant's motion for permission to appeal under 28 U.S.C. § 1292(b) (1958).

The action was commenced on December 18, 1961, in the Circuit Court of the State of Oregon for the County of Multnomah. The plaintiffs, Paul Martin and Verla Martin, his wife, were citizens and residents of Oregon,[1] and defendant, Reynolds Metals Company, is a Delaware corporation.[2]

The original purpose of the action was to recover actual damages in the sum of three hundred thousand dollars and punitive damages in the sum of one hundred thousand dollars, by reason of the alleged contamination of plaintiff's fifteen-hundred acre cattle ranch. Such contamination, it was asserted, was caused by the emanation of fluoride fumes and particulates from defendant's nearby aluminum reduction plant at Troutdale, Oregon, during the years 1956 to 1961.[3]

---

1. Paul Martin is now deceased.

2. Harold W. Zeh, a superintendent at the company's plant, was also named a defendant. The action was dismissed as to him in the early stages of the litigation and the company is therefore referred to herein as if it were the only defendant.

3. This is the latest in a series of cases in the state and federal courts involving the asserted contamination of the Martin ranch by fluoride fumes from the Troutdale plant. See Martin v. Reynolds Metals Co., 135 F.Supp. 379, aff'd sub nom. Reynolds Metals Co. v. Yturbide, 9 Cir., 258 F.2d 321; Martin v. Reynolds Metals Co., 221 Or. 86, 342 P.2d 790; Martin v. Reynolds Metals Co., 9 Cir., 297 F.2d 49. In the action now before us, a separate and independent appeal

On December 29, 1961, the action was removed to the United States District Court for the District of Oregon because of diversity of citizenship.

After pretrial proceedings had been in progress for some time the plaintiffs, on October 28, 1963, filed their second amended complaint. By that time plaintiffs were seeking actual damages in the sum of $1,428,342 and punitive damages in the sum of one million dollars. Injunctive relief against continued operation of the Troutdale plant was also sought, unless adequate controls were installed to eliminate the emanation of fluorides.

Defendants thereupon moved to dismiss the action for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted. Both grounds for the motion were premised on the assertion that primary administrative jurisdiction rests with the Sanitary Authority of the State of Oregon, which has certain functions and duties with respect to air pollution pursuant to ORS 449.760 to 449.830. Because of the primary jurisdiction of that agency, defendant contended, the exercise of jurisdiction by the district court must be suspended pending administrative determination of the matters involved in the suit.

The district court denied the motion and this appeal followed.

The doctrine of primary administrative jurisdiction, unlike the rule requiring exhaustion of administrative remedies, applies where a claim is originally cognizable in the courts. It comes into play, as the Supreme Court said in United States v. Western Pac. R. Co., 352 U. S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126:

"* * * whenever enforcement of the claim requires the resolution of issues which, under a regulatory

scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."

Appellant concedes that since this is a diversity action the law of Oregon governs in determining whether the doctrine of primary administrative jurisdiction should be applied in this case. It urges that the courts of Oregon will apply the doctrine in a proper case, and that this is such a case.

While the doctrine may not have been mentioned by name in the decisions of the Supreme Court of Oregon, it appears to have been applied in at least one case. See Valley & Siletz R. R. Co. v. Flagg, 195 Or. 683, 247 P.2d 639, 654, which involved the railroad rate-making function of the Oregon Public Utilities Commissioner. We can therefore assume, and appellee does not argue to the contrary, that cases can arise in which the courts of Oregon, applying the doctrine of primary administrative jurisdiction, would suspend judicial proceedings pending referral of the issues to a state administrative body for its views.

The precise question presented, therefore, is whether the courts of Oregon would hold that effectuation of the purpose of the legislature in enacting ORS 449.760 to 449.830, requires that the Sanitary Authority should first pass on some or all of the matters in dispute.[4]

One section of the statutes in question, namely ORS 449.820, gives the Sanitary Authority power to institute suits for injunction to compel compliance with the agency's rules, regulations and orders pertaining to air pollution. The last sentence of subsection (1) of ORS 449.-820 reads:

"The provisions of this section shall not prevent the maintenance of ac-

---

from a decree granting an interlocutory injunction requiring the Martins to remove from their premises a false and defamatory sign has recently been dismissed. Martin v. Reynolds Metals Co., 9 Cir., 336 F.2d 876.

4. That this is the applicable test for determining whether the doctrine of primary administrative jurisdiction is to be applied in a particular case, see United States v. Western Pac. R. Co., 352 U.S. 59, 65, 77 S.Ct. 161.

tions or suits relating to private or public nuisances brought by any other person, or by the state on relation of any person without prior order of the Sanitary Authority."

The question of whether this statutory language evidenced a legislative purpose that the doctrine of primary administrative purpose should not apply with regard to the air pollution statutes, ORS 449.760 to 449.830, was before the Supreme Court of Oregon in the recent case of Diercks v. Hodgdon, Or., 390 P.2d 935. On review in that case was a decree enjoining the operator of a shingle mill from permitting smoke, cinders and ashes to invade the plaintiff's residential property, and awarding damages in the sum of three hundred dollars.

On the basis of the quoted provision of ORS 449.820(1), the court rejected the argument that the plaintiff should have instituted administrative proceedings under ORS 449.760 to 449.830, before resorting to a suit in equity. The court said (at page 936):

"ORS 449.820 specifically provides that resort to administrative abatement proceedings is not a condition precedent to relief in law or equity from public or private nuisance."

The company argues, however, that the Diercks decision is not controlling here because that case sounded in nuisance, and the provision of ORS 449.820(1) on which the court relied in Diercks refers to the maintenance of actions or suits relating to "private or public nuisances." Our case, it is contended, does not sound in nuisance, but in trespass.

The complaint in Diercks made no mention of either nuisance or trespass, but the decree which was entered referred to the grievance as a "nuisance." Likewise the Oregon Supreme Court regarded the condition caused by the invasion of the plaintiff's property by smoke, cinders and ashes emanating from the defendant's shingle mill as a "nuisance." In our case, on the other hand, the complaint refers to the contamination of the plaintiff's ranch by reason of fluorides emanating from the Troutdale plant as a "trespass" upon the lands of the plaintiff, the term "nuisance" not being used.

The distinction between trespass and nuisance in the law of Oregon is dealt with at length in Martin v. Reynolds Metals Co., 221 Or. 86, 342 P.2d 790, involving these same parties and the identical kind of grievance, but for an earlier period of time. In that suit, as here, the complaint made reference to "trespass" and not to "nuisance," but the company contended that, in actuality, only a cause of action in nuisance was stated. In taking this position the company sought to apply the two-year statute of limitations applicable to nuisance actions (ORS 12.110), instead of the six-year statute applicable to actions sounding in trespass. ORS 12.080.

Upholding a trial court determination that the suit sounded in trespass, the Supreme Court (342 P.2d at page 794) defined trespass as:

"* * * any intrusion which invades the possessor's protected interest in exclusive possession, whether that intrusion is by visible or invisible pieces of matter or by energy which can be measured only by the mathematical language of the physicist."

Measured by this definition, and especially in view of the fact that this case involves precisely the same kind of grievance between the same parties, the conduct complained of in the case before us constituted a trespass, as alleged in the complaint.

In the course of its opinion in the Oregon Martin case, however, the court defined trespass and nuisance in a way which indicates that they overlap. Citing 4 Restatement, Torts 224, Intro. Note Chapter 40, the court defined a trespass as "* * * an actionable invasion of a possessor's interest in the exclusive possession of land * * *" and a nuisance as "* * * an actionable invasion of a possessor's interest in the use and enjoyment of his land. * * *." 342 P.2d at 792. The Supreme Court

784

of Oregon itself recognized this overlap, saying:

"The same conduct on the part of a defendant may and often does result in the actionable invasion of both of these interests, in which case the choice between the two remedies is, in most cases, a matter of little consequence. * * *" *Ibid.*

At least where a trespass, consisting of an interference with the possessor's interest in the exclusive possession of land, is of a continuing nature, it would seem also to interfere with that possessor's interest in the use and enjoyment of his land, and thus be a nuisance. Such is the kind of interference complained of in our case, for it has assertedly continued over a long period of time.

 We are therefore of the opinion that, under Oregon law, the conduct complained of is both a trespass and a nuisance but that the trespass aspect of the case will govern in determining which statute of limitations is to be applied.

We see no reason why the trespass aspect of the case should govern in determining whether the quoted provision of ORS 449.820(1) stands in the way of applying the doctrine of primary administrative jurisdiction. That provision speaks of actions or suits "relating" to private or public nuisances. For the reasons indicated above we think this suit relates to a private nuisance even though it sounds in trespass for purposes of the statute of limitations.

Under the company's interpretation of this statutory provision, the doctrine of primary administrative jurisdiction will or will not apply, depending upon whether the plaintiff calls the same conduct, warranting the same relief, a trespass or a nuisance. Such a demarcation between cases in which the doctrine would or would not apply borders on the capricious and could serve no perceivable purpose relevant to the air pollution statutes of Oregon. We do not believe that in ORS 449.820(1), the legislature used the term "nuisance" in a restricted sense that would produce such an arbitrary result.

In our opinion the quoted provision in ORS 449.820 renders inapplicable, under the circumstances of this case, the doctrine of primary administrative jurisdiction. It is unnecessary to consider the other reasons advanced by appellee why the doctrine is inapplicable.

Affirmed.