**UNITED STATES of America**

**v.**

**56 CARTONS CONTAINING 19,500 COPIES OF a MAGAZINE ENTITLED "HELLENIC SUN".**

**POTOMAC NEWS COMPANY**

**v.**

**J. Eugene KENNEDY, District Director of Customs.**

**Civ. Nos. 17155, 17158.**

United States District Court
D. Maryland.

April 5, 1966.

Thomas J. Kenney, U. S. Atty., Arthur G. Murphy and Fred K. Grant, Asst. U. S. Attys., Baltimore, Md., for libelant in No. 17155 and defendant in No. 17158.

Stanley M. Dietz, Washington, D. C., for Potomac News Co., claimant in No. 17155 and plaintiff in No. 17158.

THOMSEN, Chief Judge.

Two cases have been consolidated for trial: one, a proceeding under section 305 of the Tariff Act of 1930, 19 U.S.C.A. § 1305,[1] in which the government seeks forfeiture on grounds of obscenity of 19,500 copies of a magazine entitled Hellenic Sun Number Two, imported from Denmark; the other, an action by the importer to enjoin the District Director of Customs[2] from withholding the magazines. Importer contends that the material is not obscene, that section 1305 is unconstitutional because it provides for seizure before judicial scrutiny of the material, and that the procedures followed in these cases are unconstitutional because of the length of the restraint prior to such judicial scrutiny.

### Procedure

*Proceedings in the Instant Case.* On March 4, 1966, a shipment of 56 cartons containing 19,500 copies of Hellenic Sun Number Two, imported from Denmark through the Port of Entry at Baltimore, Md., consigned to custom house brokers on behalf of Potomac News Company, of Washington, D. C. (the importer), were entered as "56 ctns. books of foreign authorship, 4630 lbs., 19,500 copies".[3] The cartons were brought by Customs' contract drayman to the Appraisers' Storehouse of the Bureau of Customs on Thursday, March 10, and were examined by "verifiers" on March 11 and by the line examiner on March 14. The line examiner refused to pass them and on the same day (March 14) referred them to the Assistant Collector of Customs at Baltimore, who examined them and referred them to the United States Attorney's office on March 16. They were

---

1. That section is set out in note 1 to the opinion of this Court in United States v. 392 Copies of a Magazine Entitled "Exclusive", D.C., D.Md. 253 F.Supp. 485 filed April 4, 1966, referred to herein as the *Exclusive* case.

2. Before April 1 the District Director was known as the Assistant Collector of Customs, but he was sued as the Dis-

trict Director and will be referred to as such herein.

3. The ship containing the material had arrived in the port of Baltimore on February 28, 1966. On March 1, the broker notified the importer of the arrival, but because of banking difficulties the material was not entered at Customs until March 4.

seized [4] within the meaning of 19 U.S.C.A. § 1305 on that day and the importer was notified of the seizure on March 17. On March 18 the United States Attorney filed a libel about 9 a. m., the Marshal posted the attachment and monition at 12:05 p. m., and the importer's attorney (who had previously discussed the matter with the line examiner) filed its suit for an injunction about 1 p. m. On the same day the Court considered and refused importer's request for a temporary restraining order, but arranged for a prompt hearing of both cases.[5] The cases, including all pending motions, were consolidated for trial, and on April 1 evidence was presented and counsel were heard.

*Discussion and Conclusions.* In an opinion filed on April 4, 1966, in three consolidated cases, United States v. 392 Copies of a Magazine Entitled "Exclusive" et al., 253 F.Supp. 485, this Court discussed at length the procedures followed by Customs in handling allegedly obscene publications before February 8, 1966, and the procedures followed and to be followed after that date. The Court concluded, for reasons set out in that opinion, that 19 U.S.C.A. § 1305 is not unconstitutional, and had not been applied unconstitutionally in those cases. It is not necessary to repeat that discussion. Two items only need be added. First, the reorganization of the Customs Service, which is proceeding port by port and became effective in Baltimore on April 1, 1966, gives greater responsibilities to the line examiners, now called "commodity specialists". They will hereafter review all entry papers before the entry is made and will be in a position to expedite, at the request of an importer, the examination of dated magazines or other "First Amendment" material as to which any delays would be particularly costly. Second, as the suit for injunction filed in this case shows, an importer is not without remedy if he believes the decision whether or not to libel the material is being unreasonably delayed. Normally, under present procedures, the libel filed by the United States Attorney will secure a prompt judicial determination, and the Court will have power to release material pendente lite in a proper case. See discussion in the *Exclusive* opinion, 253 F.Supp. at 490.

■ The Court adheres to its conclusion that section 1305 is not unconstitutional.

■ In the instant case, the importer contends that the restraint prior to the filing of the libel was so unreasonably long as to deprive him of his constitutional rights and to prevent the forfeiture of the material if otherwise forfeitable. However, the delay of four days before March 4 (see note 3, above) was due to the importer. The time spent in getting the material from the pier to the Appraisers' Storehouse (four business days) after entry papers were filed on March 4 does seem long. The Court recognizes that Customs officials are faced with a difficult problem. Most imports are examined on the pier. Books, magazines, etc. are among the items which are customarily brought to the Appraisers' Storehouse, because they must be checked for a number of different points. Baltimore harbor's large shore area and many piers make it impossible to pick up every item on the day it is entered. Even so, the evidence of the customs inspector shows that in only three other instances in the last two

---

4. See discussion in United States v. One Carton Positive Motion Picture Film, S.D. N.Y., 248 F.Supp. 373, 376 (1965), quoted in note 15 of the Exclusive opinion. See also United States v. One Book Entitled "The Adventures of Father Silas", et al., S.D.N.Y., 249 F.Supp. 911, 913–14 (1966); United States v. 18 Packages of Magazines, N.D.Cal., 227 F.Supp. 198, 206, 208 (1963).

5. On March 21, the Supreme Court decided Mishkin v. State of New York, 86 S.Ct. 958 (1966), A Book Named "John Cleland's Memoirs of a Woman of Pleasure" ("Fanny Hill"), et al. v. Attorney General of Com. of Massachusetts, 86 S.Ct. 975 (1966), and Ginzburg v. United States, 86 S.Ct. 969 (1966).

years have drayage delays of more than 48 hours been encountered with respect to items which he handles. Customs must make effective efforts, including cancellation of drayage contracts if necessary, to see that the time spent before examination of books and magazines is kept as short as practicable. But it does not appear in this case that Customs was advised that there was any particular hurry; the material was entered as "56 ctns. books of foreign authorship, 4630 lbs., 19,500 copies"; the "magazines" do not bear any date, and importer's argument that one number of such a publication becomes obsolete when the next number appears is belied by the manner in which Hellenic Sun Number One and International Nudist Sun Nos. 1 to 14 are advertised in the catalogue published by importer's selling associate. After the cartons were brought to the warehouse on March 10, they were promptly moved up to the proper floor, the material was checked by the verifiers the next day, Friday, March 11, and were examined by the line examiner before 9 a. m. the next business day, Monday, March 14. The District Director of Customs decided within two days to refer them to the United States Attorney, and he filed the libel within two days thereafter.

The Court finds and concludes that there was no unreasonable detention in this case which would bar the government from prosecuting the forfeiture proceedings. The requirements of Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), discussed in the *Exclusive* case, have been met.

### Obscenity

█ Hellenic Sun Number Two contains 17 full page pictures of nude men, with the focus in most instances on the penis, which is flagrantly displayed, one picture of nude boys, and 13 pages of text, besides the title page. Although posed in outdoor settings, in only one or two of the pictures are the models engaged in any usual outdoor activities and the color photographs indicate that the men had been wearing trunks. The 13 pages of written material consist of three articles, entitled respectively, "The Health Powers of Sunbathing," "Past and Present Nudist Cultures" and "Nudism Can Cure Delinquency", which were evidently inserted to support the argument that the "magazine" is "the international sunbathing and nature living monthly magazine". The evidence, however, indicates clearly that it is dominantly and essentially a picture book of nude men, and that it is designed for and would be primarily disseminated to a clearly defined deviant group, namely, male homosexuals. The importer and an associate company operate a selling service, whose 1965-66 catalogue consists of some 100 pages of advertising of homosexual books and magazines, its "special interest field", including Hellenic Sun Number One and International Nudist Sun Nos. 1 to 14, and the attorney for the importer stated that Hellenic Sun Number Two would be marketed exclusively through the importer's selling service.

The controlling law is set out in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), as elaborated and in one respect "adjusted" by Mishkin v. State of New York, 86 S.Ct. 958 (1966), A Book Named "John Cleland's Memoirs of A Woman of Pleasure", et al. v. Attorney General of Com. of Massachusetts, 86 S.Ct. 975 (1966); Ginzburg v. United States, 86 S.Ct. 969 (1966); Manual Enterprises, Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962); and Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L. Ed.2d 793 (1964).

In A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Massachusetts (the *"Fanny Hill"* case), Mr. Justice Brennan said:

> "We defined obscenity in *Roth* in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken

as a whole appeals to prurient interest.' 354 U.S., at 489 [77 S.Ct. 1304]. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value. * * * Each of the three federal constitutional criteria is to be applied independently." 86 S.Ct. at 977.

(a) In Mishkin v. State of New York, Mr. Justice Brennan, speaking for the Court, said:

"Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement of the *Roth* test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group." 86 S.Ct. at 963.

The Court finds that the pictures in Hellenic Sun Number Two would have prurient appeal to almost all exclusively homosexual males (4% of all males, according to the testimony of Dr. Guttmacher[6] and the Kinsey studies), to most bisexual males, i. e., men who are more homosexual than heterosexual, but are making a more or less satisfactory adjustment to life in the community (10%), and to many occasional or latent homosexuals (percentage uncertain but substantial, probably around 15%). They would have such appeal to some adolescent males; to many female

adolescents they would be shocking and rather frightening but might have prurient appeal to a few. The "prurient appeal" element of the test, as elaborated in *Mishkin* has been met.

■ (b) In determining the issue of patent offensiveness, national standards should be applied in Customs cases.[7] Most of the pictures in Hellenic Sun Number Two are essentially similar to the pictures in International Nudist Sun No. 16 and Review International No. 6, involved in the *Exclusive* case, which this Court found to be patently offensive. 253 F.Supp. at 497 et seq. Most of the pictures are also similar to the pictures in Hellenic Sun Number One, which was offered in evidence by the importer in the instant case, since it had not been challenged by Customs. Hellenic Sun Number One, however, was imported before the decision in *Mishkin,* and because its prurient appeal is primarily if not exclusively to homosexuals, its admission does not tend to prove that it is not patently offensive under the present law. Moreover, the color photographs of two men in Hellenic Sun Number Two are more offensive than any of the photographs in Hellenic Sun Number One.

The Court finds Hellenic Sun Number Two to be patently offensive, for the reasons stated in the *Exclusive* case, 253 F. Supp. at 494, which need not be repeated here.

(c) The importer claims that the articles in Hellenic Sun Number Two present an idea and have some educational value and that the magazine therefore cannot be said to be *utterly* without redeeming social value.

■ The articles are not prurient or patently offensive, One, Inc. v. Oleson, 355 U.S. 371, 78 S.Ct. 364, 2 L.Ed.2d 35 (1958), and the fact that they promote

6. Chief Medical Officer of the Supreme Bench of Baltimore City and Consultant to the American Law Institute in the preparation of the Model Penal Code.

7. United States v. One Carton Positive Film, S.D.N.Y., 247 F.Supp. 450, at 464 (1965); United States v. 392 Copies of a Magazine Entitled "Exclusive" et al., D.

Md., 253 F.Supp. 485, at 494 (1966). See also Jacobellis v. State of Ohio, 378 U.S. 184, at 195, 84 S.Ct. 1676, (1964); Manual Enterprises, Inc. v. Day, 370 U.S. 478, at 488, 82 S.Ct. 1432 (1962); United States v. Ginzburg, 3 Cir., 338 F.2d 12, at 14 (1964), affirmed sub nom. Ginzburg v. United States, 86 S.Ct. 969 (1966).

nudism is not a ground for finding the books obscene. Sunshine Books v. Summerfield, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 35 (1958). On the other hand, the mere fact that the articles present an idea does not necessarily give the magazines any redeeming social value. The publication must be judged as a whole.[8] *Roth,* 354 U.S. at 489, 77 S.Ct. 1304.

Judged as a whole, it is clear that Hellenic Sun Number Two is essentially a picture book of nude males designed for and intended to be disseminated to male homosexuals, and that it is not a bona fide promotion of nudism. This conclusion is supported not only by an examination of the booklet itself, but also by several items of evidence. There is a striking difference between the format and pictures in Hellenic Sun Number Two and the format and pictures in the magazines considered by the Supreme Court in Sunshine Books v. Summerfield, which may be considered bona fide nudist magazines.[9] The copies of Hellenic Sun Number Two cost the importer about 24¢ apiece and are sold for $5.00. It is impossible to believe that *anyone would pay more than a few cents* for the text, let alone $5.00. More importantly, the catalogue of homosexual material, issued by the sales associate of the importer, through which Hellenic Sun Number Two will be marketed, shows that the magazine is designed for and will be disseminated to homosexuals because of the pictures, not to persons interested in nudism as such.

■ As Mr. Justice Brennan pointed out in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachusetts, if a publication "has the requisite prurient appeal and is patently offensive, but

has only a minimum of social value, the circumstances of production, sale, and publicity are relevant in determining whether or not the publication and distribution of the book is constitutionally protected. Evidence that the book was commercially exploited for the sake of prurient appeal, to the exclusion of all other values, might justify the conclusion that the book was utterly without redeeming social importance." 86 S.Ct. at 978. And in *Ginzburg,* speaking for the Court, Mr. Justice Brennan said that "the circumstances of presentation and dissemination of material are equally relevant to determining whether social importance claimed for material in the courtroom was, in the circumstances, pretense or reality—whether it was the basis upon which it was traded in the market-place or a spurious claim for litigation purposes." 86 S.Ct. at 947.

The Court finds that the articles in Hellenic Sun Number Two were included to support a spurious argument that it is "the international sunbathing and nature living monthly magazine",[10] and that the publication, taken as a whole, is designed for and will be disseminated and traded in the market place to homosexuals on the basis of the pictures contained therein. The Court is satisfied that the Hellenic Sun Number Two is utterly without redeeming social value.

*Conclusion re. Obscenity.* The Court concludes that Hellenic Sun Number Two is obscene within the purview of section 305 of the Tariff Act, 19 U.S.C.A. § 1305.

\*

The Court will enter an appropriate judgment order in No. 17155, and will dismiss the injunction suit, No. 17158.

---

8. To suggest an extreme example, a picture book of admittedly obscene photographs would not be protected by printing in the books the first ten Amendments to the Federal Constitution, however great the social value of those provisions may be.

9. The nudes shown in those magazines were for the most part engaged in sports

and other normal outdoor activities and the focus was not on the genitalia.

10. That claim, appearing on the title page, is identical with the claim on the title page of *International Nudist Sun No. 16* and *Review International No. 6.* See opinion in the *Exclusive* case, 253 F.Supp. at 498 (1966).