UNITED STATES of America and the
Postmaster General

v.

The BOOK BIN.

Civ. A. No. 12812.

United States District Court
N. D. Georgia,
Atlanta Division.

Sept. 8, 1969.

Probable Jurisdiction Noted
March 2, 1970.
See 90 S.Ct. 991.

John W. Stokes, U. S. Atty., Charles B. Lewis, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiffs.

Hugh W. Gibert, Haas, Holland, Freeman, Levison & Gibert, Atlanta, Ga., Robert Eugene Smith, Towson, Md., for defendant.

Before MORGAN, Circuit Judge, and EDENFIELD and HOOPER, District Judges.

EDENFIELD, District Judge:

The issue before this three-judge court is the constitutionality of 39 U.S.C. §§ 4006, 4007, under which the Postmaster General acts to curb the flow of

allegedly obscene materials through the mails.

On or about June 10, 1969, a complaint was served on the defendant by a representative of the Postmaster General under 39 U.S.C. § 4006, charging that the magazine "Models of France", distributed by defendant, was obscene. An order granting an expedited proceeding was attached, setting a hearing for July 8, 1969, which has since been postponed indefinitely. On June 13, 1969, the United States notified defendant that a temporary restraining order and preliminary injunction would be sought under 39 U.S.C. § 4007, in the United States District Court for the Northern District of Georgia. Under § 4007, a court, upon a showing of probable cause that the obscenity statute has been violated, may direct the detention of all of a defendant's incoming mail, pending the conclusion of the § 4006 proceedings and any appeal therefrom. By way of answer and counterclaim, defendant, has challenged the statutory scheme employed under §§ 4006, 4007. A three-judge court was convened to consider this constitutional challenge. At oral hearing, the Government recognized the desirability of an immediate determination of the constitutional questions.

Under § 4006:

"Upon evidence satisfactory to the Postmaster General that a person is obtaining or attempting to obtain remittances of money or property of any kind through the mail for an obscene, lewd, lascivious, indecent, filthy, or vile article, matter, thing, device, or substance, or is depositing or causing to be deposited in the United States mail information as to where, how, or from whom the same may be obtained, the Postmaster General may—

(1) direct postmasters at the office at which registered letters or other letters or mail arrive, addressed to such a person or to his representatives, to return the registered letters or other letters or mail

to the sender marked 'Unlawful'; and

(2) forbid the payment by a postmaster to such a person or his representative of any money order or postal note drawn to the order of either and provide for the return to the remitters of the sums named in the money orders or postal notes."

Thus, upon an administrative finding by the Postmaster General that the defendant is sending obscene material through the mail, all of his incoming mail may be marked unlawful and returned to the senders, and the Postmaster General may forbid payment of any money orders or postal notes drawn to his name and likewise return them to the senders.

However, prior to 1956, the Postmaster had no authority to prevent the delivery of mail to the suspected offender during the pendency of the statutory [§ 4006] proceedings. "As a result, the person against whom such a mail block was finally imposed had frequently already reaped the harvest from his illegal activity and, mail addressed to one location having been blocked, simply launched a similar activity at a new address." Senate Report No. 1818, U.S. Code Cong. and Admin.News, 86th Cong., 2d S., 1960, at p. 3246.

■ To remedy this situation, the Postmaster General in 1956 received congressional authority to enter an order permitting the temporary, 20-day, impounding of a defendant's incoming mail pending culmination of statutory proceedings and appeal, if necessary to the enforcement of § 4006. The United States District Court could extend the period of detention upon the petition of the Postmaster General. Because of the hardship imposed by the 20-day limitation, the Post Office Department requested—and a House of Representatives bill granted—a 45-day period of detention of a defendant's incoming mail, after which an extension could be obtained by a United States District Court

order. However, in 1960, the Congress adopted a Senate measure which removed the arbitrary time limit on detention pending § 4006 action, by substituting a judicial injunction permitting detention throughout the course of the statutory proceedings under § 4006. The 1960 bill, now § 4007, was designed to insure "court supervision of the exercise of the power to detain mail" coming to the defendant. *See*, U.S.Code Cong. and Admin.News, 86th Cong., 2d S., 1960, at p. 3246; Manual Enterprises, Inc. v. Day, 370 U.S. 478, 512–519, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962) (Brennan, J., concurring). Section 4007 provides, in pertinent part:

> "(a) In preparation for or during the pendency of proceedings under sections 4005 and 4006 of this title, the United States district court in the district in which the defendant receives his mail shall, upon application therefor by the Postmaster General and upon a showing of probable cause to believe the statute is being violated, enter a temporary restraining order and preliminary injunction pursuant to rule 65 of the Federal Rules of Civil Procedure directing the detention of the defendant's incoming mail by the postmaster pending the conclusion of the statutory proceedings and any appeal therefrom. The district court may provide in the order that the detained mail be open to examination by the defendant and such mail be delivered as is clearly not connected with the alleged unlawful activity. An action taken by a court hereunder does not affect or determine any fact at issue in the statutory proceedings."

Section 4007 thus complements § 4006, *see*, 39 C.F.R. § 952.6, and the two sections should be interpreted together. For reasons set out below, we find this statutory scheme violative of the First Amendment to the United States Constitution.

 First, under § 4007, the United States can obtain a court order detaining *all* of the incoming mail to the defendant. The breadth of this section goes far beyond merely maintaining the status quo. While the defendant may secure delivery of mail which is clearly "not connected with the alleged unlawful activity", the statute imposes an affirmative obligation upon him to examine the mail and demonstrate its nonconnection. This obligation to come from under an overly broad statutory imposition puts an unconstitutional restraint on the defendant's First Amendment rights. Thus, in Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965), the Court considered a procedure under which the Postmaster General could withhold communist political propaganda sent to an addressee—as well as similar material sent in the future, if the addressee did not return a card to the post office within 20 days of its receipt. In order to receive the mail, the addressee had to request in writing on the card that it be delivered. This procedure was struck down because, as in the instant action, "[t]he addressee carries an affirmative obligation which we do not think the Government may impose on him. This requirement is almost certain to have a deterrent effect * * *." Lamont v. Postmaster General, supra, at 307, 85 S.Ct. at 1496. Justice Brennan, in a concurrence, recognized that the consequence of inaction by the addressee was not only nondelivery of the material in question, but "a denial of access to like publications which he may desire to receive." 381 U.S. at 309, 85 S.Ct. at 1498. Like the procedures considered in *Lamont*, § 4007 suffers both from a fatal overbreadth of reach, in detaining all incoming mail, and from imposition of an unwarranted affirmative obligation on the defendant to remove mail unrelated to the alleged obscenity in question. It disrupts, rather than maintains, the status quo, pending post office action in § 4006.

Second, the procedures established in §§ 4006, 4007, do not pass constitutional muster under the tests established by

the Supreme Court of the United States. Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (per Brennan, J.), establishes the litmus tests by which we should be guided in cases such as this. There the Supreme Court recognized, as it had before, Times Film Corp. v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961), that prior submission of material to agency censorship action was not per se unconstitutional under proper safeguards. To avoid First Amendment problems, the Court required that the procedures impose the burden of proof on the censor to show obscenity, permit restraint prior to judicial review only to preserve the status quo, limit the restraint to the shortest period compatible with sound judicial administration, and assure prompt and complete judicial review. The procedures established under §§ 4006, 4007, fall short of meeting these rigid requirements.

Under these sections, no restraint is generally imposed under § 4006 until a § 4007 judicial order is obtained. However, under § 4007, the court must issue a restraining order merely upon a showing of "probable cause." This judicial determination of probable cause is not binding in any way on the administrative decision in § 4006. Section 4007 specifically provides, "An action taken by a court hereunder does not affect or determine any fact at issue in the statutory proceedings." Indeed, this quoted passage was inserted at the behest of the Postmaster General to "guarantee that counsel for a mailer will not be able to raise successfully a bar to all further administrative proceedings in a case in which the Government failed to prevail on its motion for a preliminary injunction." Letter, Arthur E. Summerfield, Postmaster General, to Senator Olin D. Johnston, Chairman, Senate Committee on Post Office and Civil Service, U.S.Code Cong. and Admin.News, 86th Cong., 2d S., 1960, at p. 3249. If a United States District Court fails to find probable cause, as it often will, the Postmaster General could still find a violation of § 4006 and impose the restrictions pursuant to that section, without any prior judicial hearing on obscenity. Moreover, it is doubtful if the limited judicial finding implicit in the grant of a § 4007 finding insulates the procedure from constitutional infirmity, since the court issues its order merely on a finding of probable cause, not an actual determination of obscenity. Thus, the statutory scheme effectively operates as a prior restraint.

While prior restraints are not per se indefensible, they bear a heavy presumption of invalidity. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968). This presumptive invalidity is not overcome in the instant case by carefully drawn safeguards. Contrast, Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). The administrative procedures established by regulation under § 4006, see 39 C.F.R. §§ 952.1–952.33, do not provide the procedural safeguards envisioned by *Freedman* and succeeding Supreme Court cases. Thus, in Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968), a 50- to 57-day delay between initiation of administrative procedures and institution of judicial proceedings in a censorship action was found to be violative of First Amendment rights. In *Freedman* itself, a delay of four months in securing initial judicial determination and six months in obtaining final appellate review was condemned. 380 U.S. at 55, 85 S.Ct. 734. *Compare,* United States v. One Carton Positive Motion Picture Film, etc., 247 F.Supp. 450 (S.D.N.Y.1965), rev'd. on other grounds, 367 F.2d 889 (2d Cir. 1966). Under the instant procedures, a hearing date under § 4006 must be provided, "[w]henever practicable * * * within 30 days of the date of the notice" of the hearing. 39 C.F.R. § 952.7. In the instant case a hearing was set four weeks after serv-

ice of the complaint against the defendant, although it has since been postponed. After an administrative hearing, the Post Office hearing examiner is required only to issue a report with "all due speed." 39 C.F.R. § 952.24. If the hearing examiner finds against the defendant, an appeal must be taken, to exhaust administrative remedies, within 15 days of the examiner's decision. 39 C.F.R. § 952.25. There is no deadline for the decision on administrative appeal. Moreover, 39 C.F.R. § 952.27 provides for the filing of a motion for reconsideration of a final Departmental decision.

During this protracted procedure, all of the defendant's mail may be detained if a § 4007 order has been obtained—with only a judicial decision of probable cause of obscenity. Even if the court failed to find probable cause and did not issue a § 4007 order, the defendant would be dissuaded from soliciting orders and distributing the challenged material, because of the possibility that remittances for the material would be withheld once § 4006 administrative action was complete. This chilling inhibition on First Amendment rights during the pendency of length administrative procedures cannot withstand constitutional assault. An inhibition as well as a prohibition are equally denied to the Government in the First Amendment area. Lamont v. Postmaster General, supra, 381 U.S. at 309, 85 S.Ct. 1493 (Brennan, J., concurring); see, also Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

Moreover, if the final administrative decision is against him, the defendant, under the Administrative Procedure Act, must institute judicial review and has the burden of demonstrating that no substantial evidence exists to support the Postmaster's finding of obscenity. This is too great an imposition of defendant's First Amendment rights. See, especially, Freedman v. Maryland, supra, 380 U.S. at 59–60, 85 S.Ct. 734, where such a burden was found unacceptable. Compare United States v. One Carton, etc., supra, 247 F.Supp. at 458, where the court upheld the constitutionality of § 305 of the Tariff Act, because, in part, the defendant there did not bear the burden of securing a judicial determination of obscenity; rather the burden was thrust on the Government. See, also, United States v. 56 Cartons Containing 19,500 Copies of Magazine Entitled "Hellenic Sun", 253 F.Supp. 498 (D.Md.1966), aff'd., 373 F.2d 635 (4th Cir. 1967). The application of the Postmaster General here for an injunction under § 4007 does not correct this constitutional flaw in the instant statutory network. As noted, § 4007 does not permit a full judicial finding on obscenity, but restricts a court to a finding of probable cause. Moreover, even if a court found the material in question non-obscene and failed to issue a § 4007 order, the Postmaster would not be barred from proceeding under § 4006, with the attendant restraints discussed.

Thus, in short, action under § 4006–7 may be taken which goes beyond preservation of the status quo, which fails to assure a prompt administrative decision, and which thrusts the requirement of a judicial determination on the defendant.

Third, contrary to the Government's central argument, the statutes impose a direct restraint on the distribution of the allegedly obscene materials. We reject the Government's argument that its actions are aimed only at remittances, not at distribution of obscene materials. See, United States ex rel. Milwaukee Social Democratic Publishing Co. v. Burleson, 255 U.S. 407, 437, 41 S.Ct. 352, 65 L.Ed. 704 (1921) (Holmes, J., dissenting); Stanard v. Olesen, 74 S.Ct. 768, 771 (1954) (Douglas, J., as Circuit Judge). Any action aimed at remittances received for material will have a direct restraint on distribution of the material itself. A defendant is likely to restrict or end distribution of material as to which a § 4007 order has been obtained, or as to which a § 4006 proceeding is pending. The United States may not accomplish by indirection, through

**1028**

action against remittances, what it cannot do directly. The United States urges that the predecessor to § 4006 has been upheld against constitutional assault by the courts. However, the decisions cited either go off on other grounds or give little if any consideration to the constitutional issue raised. Thus, in Tourlanes Publishing Co. v. Summerfield, 98 U.S.App.D.C. 20, 231 F.2d 773 (1956), cert. denied, 352 U.S. 912, 77 S.Ct. 145, 1 L.Ed.2d 117, cited by the United States, the court specifically stated they were not reaching the "difficult constitutional issues raised" by the cross-appeal, concerning the Postmaster General's refusal to deliver all of Tourlanes' mail. 231 F.2d at 775. Glanzman v. Finkle, 150 F.Supp. 823 (E.D.N.Y.1957), assumes the constitutionality of the predecessor to § 4006, citing Summerfield v. Sunshine Book Co., 95 U.S.App.D.C. 169, 221 F.2d 42 (1954), cert. denied, 349 U.S. 921, 75 S.Ct. 661, 99 L.Ed. 1253, yet the latter case, also cited by the Government, did not fully consider the constitutional questions, 221 F.2d at 48, but concentrated on the breadth of the Postmaster's order. Moreover, these preceded Freedman v. Maryland, supra, and many of the other cases imposing strict procedural requirements on Government censorship. *See, e. g.,* A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Poulos v. Rucker, 288 F.Supp. 305 (M.D.Ala.1968); Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky.1968); Cambist Films, Inc. v. State of Illinois, 292 F.Supp. 185 (N.D.Ill.1968); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Tyrone, Inc. v. Wilkinson, 294 F.Supp. 1330 (E.D.Va.1969); Bee See Books, Inc. v. Leary, 291 F.Supp. 622 (S.D.N.Y. 1968). The most recent court to consider § 4006, a three-judge court in Rizzi v. Blount, C.D.Cal.1969, 305 F.Supp. 634 (per curiam), held it unconstitutional on its face as contrary to *Freedman,* supra, and *Lamont,* supra. Our discussion here, concerning §§ 4006, 4007, supports that court's conclusion.

We understand the concern of Congress and the Post Office to restrict the flow of obscenity through the mails. It may perhaps be true that criminal punishment for mailing obscenity under 18 U.S.C. § 1461 is an inadequate weapon in the Postmaster General's arsenal. However, it is vital that prompt judicial review on the issue of obscenity—rather than merely probable cause—be assured on the Government's initiative before the severe restrictions in §§ 4006, 4007, are invoked.

In the instant case, the defendant can only get full judicial review on the question of obscenity—by which the Postmaster would be actually bound—after lengthy administrative proceedings, and then only by his own initiative. During the interim, the prolonged threat of an adverse administration decision in § 4006 or the reality of a sweeping § 4007 order, will have a severe restriction on the exercise of defendant's First Amendment rights—all without a *final* judicial determination of obscenity. Judicial participation in the finding of obscenity under the statutory scheme here is either too little (§ 4007) or too late (§ 4006).

The statutory scheme is unconstitutional and we therefore grant defendant's motion to dismiss and its counterclaim.