Charles B. ANDERSON, Jr., et al.

v.

Honorable William T. DEAN et al.

Civ. A. No. 16662.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 20, 1973.

Michael Padnos, Atlanta, Ga., for plaintiffs.

George P. Dillard, Herbert O. Edwards, Robert E. Mozley, Decatur, Ga., W. Dan Greer, Atlanta, Ga., for defendants.

## ORDER

EDENFIELD, District Judge.

Charles B. Anderson, Jr. ["plaintiff"] and two anonymous persons have filed this class action pursuant to 42 U.S.C. § 1983 (1970) by which they seek declaratory and injunctive relief against the enforcement by defendant J. Lamar Martin, as Sheriff of DeKalb County, Georgia, of certain orders issued by defendant the Honorable William T. Dean and defendant the Honorable H. O. Hubert, Jr., Judges in the Superior Courts of DeKalb County. The matter is before the court on plaintiffs' motion for summary judgment.

The uncontested facts before this court are that on June 7, 1971, counsel for the Pennsylvania Life Insurance Company ["Penn"] appeared before Judge Hubert and filed a four-page "Complaint Seeking Injunction" accompanied by a one-paragraph affidavit signed by a representative of Penn. The "complaint" alleged that for a period of approximately four years prior to June 1, 1971 plaintiff, Charles B. Anderson, Jr., had been employed by Penn as a salaried field claims representative. As part of his duties he allegedly called upon Penn policyholders who had submitted claims for disability income payments to determine the nature and extent of the claimed disability and adjust or settle the claims. Plaintiff allegedly called upon Penn policyholders in nine southeastern states and California. On May 28, 1971 Penn allegedly terminated plaintiff's employment, whereupon, according to the "complaint", plaintiff "threatened" to mail a letter to each of approximately 115 Penn policyholders upon whom plaintiff had called as well as the commissioners of insurance in the states in which they resided suggesting that their claims had not been properly handled by Penn. According to the "complaint" plaintiff advised Penn that the letters would not be mailed for ten days to allow Penn the opportunity to pay plaintiff "large sums of money" or to retract his termination notice and en-

ter into a long-term employment contract with him. The "complaint" characterized the letters as containing "false and malicious defamation" of Penn, "tending to injure [Penn's] reputation and expose it to public hatred, contempt and ridicule," and alleged that they would have the effect of "interfering with the normal and legitimate business of [Penn] by inciting dissension and ill will between [Penn] and numerous policyholders and claimants, as well as the Commissioners of Insurance in the States in which [Penn] does business . . . ." Penn also contended that unless the Superior Court of DeKalb County enjoined plaintiff from mailing the letters Penn would suffer great prejudice and irreparable injury. The one-paragraph affidavit signed by a Penn representative and attached to the "complaint" attested to the truth of the statements in the "complaint". The "complaint" contained no showing that plaintiff had been served with a copy or that he had been notified that Penn would appear in Superior Court to seek an injunction. The "complaint" sought an *ex parte* injunction which by its terms would extend to all agents, attorneys, and others acting in cooperation with plaintiff.

At 5:55 P.M., June 7, 1971, Judge Hubert entered a 30-day *ex parte* restraining order against plaintiff which stated the following:

"ORDER

"The within Complaint read and considered, the same is hereby ordered filed.

"The defendant is ordered to show cause before the Judge presiding in the Motions Division of this Court, at the DeKalb County Courthouse, Decatur, Georgia, at 10:00 o'clock A.M., on the 7th day of July, 1971, why the prayers of plaintiff should not be granted and why defendant should not be temporarily restrained and enjoined as prayed.

"In the meantime, and until further order of this Court, the defendant is restrained from publishing the letters described in the Complaint to the Commissioners of Insurance and/or policyholders of plaintiff and from in any manner communicating with said policyholders, claimants, and employees of plaintiff; and the terms of this restraining order shall extend to all agents, employees, and other persons acting in concert or cooperation with defendant.

"Let a copy of said Complaint and this Order be served upon the defendant.

"SO ORDERED this 7th day of June, 1971 at 5:55 P.M.

/s/ H. O. Hubert, Jr.
  Judge of Superior Court
  Stone Mountain Judicial Circuit"

On July 2, 1971, with the consent of counsel representing both Penn and plaintiff, Judge Clarence Peeler, Jr. of the Superior Court of DeKalb County, entered an order continuing the date of the hearing on the show cause order from July 7, 1971 until further order of the court and providing that in the meanwhile the *ex parte* restraining order would remain in full force and effect.

Sometime in the first two weeks of August, 1971, while the *ex parte* restraining order was still in effect, plaintiff mailed the letters described in Penn's "complaint" to some 83 policyholders.

On August 16, 1971 Penn moved for default judgment against plaintiff in the Superior Court of DeKalb County, and on August 25, 1971 Penn filed a motion for attachment for contempt. On August 25, 1971 Judge Dean entered an order requiring plaintiff to show cause on September 27, 1971 why he should not be adjudged in contempt of court and punished accordingly. A hearing was held on September 27 before Judge Dean, at which plaintiff appeared without counsel. At the conclusion of the hearing Judge Dean entered an order in which he found that plaintiff had violated the *ex parte* restraining order by

mailing the 83 letters and was in contempt of court. Judge Dean sentenced plaintiff to serve 20 days for each of the 83 letters sent, for a total of 1660 days. Judge Dean's order provided that 60 days of the sentence were to be served in the common jail of DeKalb County while the remainder were to be served outside the confines of the jail on probation so long as plaintiff did not further violate the terms of the *ex parte* restraining order. The order also found that plaintiff was in default in the case and the restraining order was made permanent.

In his complaint in this court plaintiff seeks:

(1) A declaratory judgment that the restraining order issued by Judge Hubert and the permanent injunction issued by Judge Dean are unconstitutional and void;

(2) A declaratory judgment that the contempt conviction against plaintiff by Judge Dean is unconstitutional and void; and

(3) A permanent injunction restraining any future enforcement of the contempt conviction entered by Judge Dean.

■ Although this court has been most reluctant to resolve the dispute in this case by judicial decree, it finds itself duty-bound to do just that. *See* Mitchum v. Foster, 407 U.S. 225, 92 S. Ct. 2151, 32 L.Ed.2d 705 (1972); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); Hall v. Garson, 430 F.2d 430 (5th Cir. 1970); Machesky v. Bizzell, 414 F.2d 283 (5th Cir. 1969). It must be emphasized, however, that this court does not sit as an appellate court with jurisdiction to review decisions rendered by judges of the state courts, and its sole concern in this case is with the federal constitutional issues raised.

■ As this court has held, the right to mail letters is a First Amendment right and any prior restraint on that right, which bears a heavy presumption of invalidity, must be carefully scrutinized. United States v. Book Bin, 306 F.Supp. 1023 (N.D.Ga.1969) (three-judge court), aff'd Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971). As the Supreme Court has often said: "Freedoms of expression must be ringed about with adequate bulwarks." Bantam Books v. Sullivan, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963).

■ Libel, like obscenity, is not protected by the First Amendment. Beauharnais v. Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952); Smoot v. Fox, 353 F.2d 830 (6th Cir. 1965), cert. denied, 384 U.S. 909, 86 S.Ct. 1342, 16 L.Ed.2d 361 (1966). Thus an injunction directed against a libel is not unconstitutional, Martin v. Reynolds Metals Co., 224 F.Supp. 978 (D.Ore.1963), appeal dismissed 336 F.2d 876 (9th Cir.), aff'd on other grounds, 337 F.2d 780 (9th Cir. 1964); *see* Chaplinsky v. New Hampshire, 315 U.S. 568, 571–572, 62 S. Ct. 766, 86 L.Ed. 1031 (1942), whatever standing it might have under principles of equity. But just as prior restraint may not be imposed upon material thought to be obscene without adequate safeguards, Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), so, too, a prior restraint may not be imposed upon a suspected libel without adequate safeguards. *See* Marcus v. Search Warrants, 367 U.S. 717, 731, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); Martin v. Reynolds Metals Co., *supra.*

In Carroll v. Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968), petitioners were members of a "white supremacist" political party which had held a rally in Princess Anne, Maryland, on August 6, 1966, at which militantly racist speeches were made to a crowd of whites and blacks. It was announced that the rally would be resumed the next night. That day, local officials of Princess Anne obtained an *ex parte* restraining order from a state circuit court restraining petitioners for

ten days from holding rallies "which will tend to disturb and endanger the citizens of the County," and the August 7th rally was cancelled. After trial ten days later, the state circuit court issued another order extending its previous order for ten months. The Maryland Court of Appeals affirmed the ten-day order but reversed the ten-month order, holding that the period of time was unreasonable. Petitioners sought review in the Supreme Court of the affirmance of the ten-day order.

The Supreme Court did not reach the question of whether the ten-day order constituted a prior restraint on speech. Petitioners had contended that it was a prior restraint while respondents had maintained, among other things, that the rallies presented a "clear and present danger" to Princess Anne and were not entitled to First Amendment protection. Instead, the Court vacated the ten-day order on the grounds that it had been issued *ex parte*, without notice to petitioners and before an adversary proceeding. The Court emphasized that any prior restraint upon expression bears a heavy presumption against its constitutional validity, but that even where this presumption might otherwise be overcome the restraint must be the product of careful procedural provisions designed to assure the fullest consideration of the matter at hand which the circumstances permit. The Court held:

"There is a place in our jurisprudence for *ex parte* issuance, without notice, of temporary restraining orders of short duration; but there is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate." 393 U.S. at 180, 89 S. Ct. at 351.

■ In the present case, it is uncontroverted that Judge Hubert's order restraining Anderson's First Amendment rights was issued *ex parte*. Without regard to the language of the order it would appear to be constitutionally infirm since no showing had been made justifying the failure to notify Anderson and afford him an adversary hearing on the matter.

■ Even if plaintiff had been given notice of or had appeared at the hearing held before Judge Hubert, a short-term restraining order enjoining him from mailing letters would have been constitutionally valid only if there were a reasonable basis to believe that the letters were not protected by the First Amendment. To the extent that the letters merely criticized Penn's business practices or were designed to have a coercive impact on Penn, they were not removed from First Amendment protection. Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). In *Keefe* a racially integrated community organization in a suburb of Chicago distributed leaflets critical of a real estate broker's business practices. Some of the leaflets described the broker as a "panic peddler" and urged recipients to call him at his home and convince him to sign an anti-blockbusting agreement. The leaflets were even passed out to parishioners on their way to or from the broker's church and to the broker's neighbors. The broker sought an injunction in a state circuit court and, after an adversary hearing, obtained one. The Appellate Court of Illinois affirmed. The Supreme Court, 8–1 (Justice Harlan dissenting on procedural grounds), in an opinion written by Chief Justice Burger, reversed. The Court held that the injunction operated as a prior restraint, that this restraint had been imposed on protected expression, and that it was unconstitutional.

But even if the letters were, in fact, libelous, and therefore not entitled to First Amendment protection, the language of Judge Hubert's order appears

"overbroad" in the constitutional sense. The order prohibited Anderson from "in any manner communicating with" employees of Penn and it was extended to "all agents, employees, and other persons acting in concert or cooperation" with Anderson.

■ It is well settled that "an order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." Carroll v. Princess Anne, *supra*, 393 U.S. 183, 89 S.Ct. 353. In Crosby v. Bradstreet Co., 312 F.2d 483 (2d Cir.), cert. denied, 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412 (1963), plaintiff instituted a libel action against defendant based on a credit report published by defendant which stated that plaintiff had been found guilty of fraud. The action was settled by stipulation and the district court entered an order which stated that defendant was to "refrain from issuing or publishing any report, comment or statement either in writing or otherwise concerning [plaintiff] . . . . or concerning the business activities of any of the foregoing persons . . .; whether present, past or future." The Second Circuit held that even if, contrary to authority, the order was properly entered under principles of equity, it was in violation of the First Amendment. The Court stated:

"We are concerned with the power of a court of the United States to enjoin publication of information about a person, without regard to truth, falsity, or defamatory character of that information. Such an injunction, enforceable through the contempt power, constitutes a prior restraint by the United States against the publication of facts which the community has a right to know and which Dun & Bradstreet had and has the right to publish. The court was without power to make such an order. . . ." At 485.

Similarly, in Machesky v. Bizzell, 414 F.2d 283 (5th Cir. 1969), several businessmen brought suit in the chancery court of Leflore County, Mississippi, to enjoin the picketing and boycotting activities of plaintiffs. After an evidentiary hearing the court issued the injunction which, among other things, prohibited "loitering or congregating . . . to induce, persuade, or coerce any person or persons not to trade or do other business with . . . Complainants." Plaintiffs then brought suit in federal district court seeking declaratory and injunctive relief against the state court judge who issued the injunction and against the businessmen. The federal district court did not hold an evidentiary hearing and, instead, granted defendants' motion to dismiss. The Fifth Circuit reversed. In an opinion written by Judge Bell the court held that the state court injunction was unconstitutionally overbroad in that it lumped the protected with the unprotected, and it further held that the district court erred in failing to enjoin the state court proceedings to the extent they violated plaintiffs' First Amendment rights. *Accord*, Lynch v. Snepp, 350 F. Supp. 1134 (W.D.N.C.1972).

■ For all of the above reasons the *ex parte* restraining order issued by Judge Hubert against plaintiff in the Superior Court of DeKalb County on June 7, 1971, as well as the order entered on July 2, 1971 by Judge Peeler of that court extending the life of Judge Hubert's order and that portion of the order entered by Judge Dean on September 27, 1971 making Judge Hubert's order a permanent injunction, must be declared unconstitutional and void and their continued enforcement by the Sheriff of DeKalb County must be enjoined.

■ The judgment of contempt entered by Judge Dean in his order of September 27, 1971, however, must

stand. A citizen is not at liberty to disregard an injunction duly issued by a court of competent jurisdiction with equity powers upon pleadings properly invoking its action and served upon him as a party within the territorial jurisdiction of the court, even if the injunction is unconstitutional. Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); United States v. Dickinson, 465 F.2d 496 (5th Cir. 1972). It follows that plaintiff was obliged to comply with Judge Hubert's order, as extended by Judge Peeler, and his failure to do so made him liable for contempt. Those portions of Judge Dean's order holding plaintiff in contempt and punishing him are not invalid or unconstitutional.

For the foregoing reasons plaintiffs' motion for summary judgment is granted in part and denied in part, as follows:

(1) It is granted to the extent that the *ex parte* restraining order issued against plaintiff by defendant the Honorable H. O. Hubert, Jr., Judge of the Superior Court, DeKalb County, Georgia, on July 7, 1971, is hereby declared unconstitutional and void, and that the order of Judge Clarence Peeler, Jr. of that court extending the life of Judge Hubert's order and that portion of the order of defendant the Honorable William T. Dean, Judge of the Superior Court, DeKalb County, Georgia, converting Judge Hubert's order into a permanent injunction are hereby declared unconstitutional and void;

(2) It is granted to the extent that defendant J. Lamar Martin, Sheriff of DeKalb County, Georgia, or his successor, is hereby permanently enjoined from enforcing the aforementioned orders of Judge Hubert and Judge Peeler and the aforementioned portion of the order of Judge Dean; and

(3) It is denied in all other respects.

It is so ordered.