**Patrick J. McCORMICK, II, Plaintiff,**

v.

**CAMP POCONO RIDGE, INC. II, and Thomas Santay, Defendants.**

**No. 3:CV–88–1194.**

United States District Court,
M.D. Pennsylvania.

April 11, 1991.

---

Thomas I. Vanaskie, Scranton, Pa., for plaintiff.

Paul A. Barrett, O'Malley, Harris & Schneider, P.C., Scranton, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

## I. BACKGROUND

This action involves a dispute over the rights and liabilities of the parties relating to the ownership of land within the Wallenpaupack Preserve. Plaintiff Patrick McCormick II initiated this action by filing a complaint on August 5, 1988. By Order dated September 7, 1988, the Honorable William J. Nealon granted plaintiff's request for a temporary restraining order restraining the defendants from "prohibiting access to plaintiff to cross over, use, and enjoy the roads and lanes and other common areas in and about the Wallenpaupack Preserve". On December 29, 1989, defendants Camp Pocono Ridge, Inc. II (Camp II) and Thomas Santay filed an amended answer and counterclaim to McCormick's complaint.

The defendants filed a motion for partial summary judgment on November 21, 1990. On that same date, the plaintiff filed a motion seeking summary judgment against the defendants' amended counterclaim.

A jury was selected April 1, 1991, but presentation of the case to the jury has been deferred until the Court has ruled on the outstanding motions for summary judgment.

## II. RELEVANT FACTS

William H. Hough, Jr. established the Wallenpaupack Preserve in the 1920s. Hough and his wife Helen were the common grantors of all lands within the Preserve, including Lot No. 6, which was purchased by the plaintiff's family in 1936.[1] The chain of title to Lot No. 6, as set forth in plaintiff's brief in support of his motion for summary judgment, is as follows:

1. August 31, 1927—William H. Hough, Jr. and Helen E. Hough, his wife, to Charles D. Bartholomew.

2. December 9, 1930—Bartholomew to Robert E. Lamberton.

3. November 13, 1936—Lamberton to L.W. and Elizabeth F. McCormick, plaintiff's parents.

4. November 24, 1964—L.W. and Elizabeth F. McCormick to Patrick J. McCormick.

5. January 19, 1967—Patrick J. and Joan R. McCormick to Elizabeth F. McCormick.

6. September 1, 1967—Elizabeth F. and

---

1. Since the time the McCormick family first obtained the title to Lot No. 6 the property has served as the family "homestead"; a family

L.W. McCormick to E.L.P. Corporation.[2]

E.L.P. Corporation ("E.L.P.") was a closed corporation and its only four shares of stock were owned by the plaintiff, his brother Leo McCormick and his mother Elizabeth McCormick.[3] Plaintiff's mother died on November 9, 1975 and E.L.P.'s corporate charter became void and inoperative on March 1, 1981 due to non-payment of franchise taxes.[4] On January 1, 1981, plaintiff acquired any and all interest his brother held in E.L.P.

In approximately 1935 or 1936, Russell Low purchased Henry and Helen Hough's interest in the Wallenpaupack Preserve. Lots within the preserve that were individually owned, including Lot No. 6, were not affected by this transfer of ownership. In 1957, Samuel Santay, the father of defendant Thomas Santay, and Yale Newman acquired Low's interest in the Preserve and converted the Preserve into a youth summer camp. Santay and Newman conveyed their interest in the property to Camp Pocono Ridge, Inc. on October 8, 1965. Twenty-two years later, on October 6, 1987, Camp Pocono Ridge, Inc. conveyed its interest in the preserve to Camp II. The shares of Camp II are owned exclusively by the defendant Thomas Santay, his wife Edna, and Mel and Jane Wolynez.

The original Hough to Bartholomew deed contains the following relevant restrictions:

UNDER AND SUBJECT to the following restrictions and limitations which are hereby agreed and accepted by the said grantee, for himself, his heirs and assigns, as covenants running with the land ...

FIFTH: That if at any time in the future said grantee shall desire to sell said property or any portion thereof, he shall first give to the said grantors, their heirs and assigns, an option to purchase the same at its full market value, and only in the event of the failure or refusal of the said grantors, their heirs and assigns, to exercise said option within a reasonable time after notice of such intended sale and the name and address of the intended purchasers, have been given to him or them, shall any conveyance or sale be made to any third person.

SIXTH: That said restrictions and limitations are intended for the benefit and protection of all the purchasers of any parts or portions of the land conveyed to the said William H. Hough, Jr., by said Homer L. Gilpin and wife as hereinabove recited, and they are made solely for the preservation of said land for recreation and residential purposes only and so understood by the grantee.

The deed also conveys to the grantee "the free and common use, right and privilege of all roads and lanes in, upon and about said Wallen Paupac Preserve as passage ways in common with all the other owners and occupiers of land in said Preserve at all times hereafter forever."

The plaintiff and his family have always considered the parcel of land which is immediately adjacent to their property as a "common area". This parcel is bordered by Lot No. 6; Allen Lane, the main access road leading through the Preserve; and two lots which like Lot No. 6 are individually owned. In addition, the McCormicks have also used other areas within the Preserve which the defendants claim are not common "roads and lanes" as stated in the original deed. It is these so-called "common areas" which are the focal point of this dispute.

In the summer of 1988, Thomas Santay caused the plaintiff's daughter-in-law to be

---

gathering place for major holidays and vacations.

**2.** Plaintiff cites the office of the Recorder of Deeds in and for Pike county as the source of the information concerning the chain of title to Lot No. 6.

**3.** Elizabeth McCormick held two shares of E.L.P.'s stock while plaintiff and his brother held one each.

**4.** It is unknown whether Elizabeth McCormick died testate or intestate. Leo W. McCormick, Sr., plaintiff's father, died July 18, 1978. His will provided that, in the event of his wife's prior death, all of his property should be given, devised and bequeathed to his sons, Leo McCormick, Jr. and plaintiff, equally.

issued a citation by the Pennsylvania State Police for criminal trespass for being in an area of the Preserve owned by Camp II, a section of the Preserve which the McCormicks have always considered part of the "common area". As a result of this incident, plaintiff filed the instant action to protect what he believes is his right to use the common areas of the Preserve.

## III. STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in a light most favorable to the non-moving party. *Continental Insurance v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). If there is no genuine issue of material fact, summary judgment may be granted to the party entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a plaintiff may not merely restate the allegations of his complaint. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a plaintiff rely on self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett*, supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. A plaintiff must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the plaintiff fails to provide such evidence, then he is not entitled to a trial and the defendant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ Count V of the complaint seeks damages based on intentional infliction of emotional distress as defined in the Restatement, Second, Torts § 46(1) (1965), which provides:

§ 46 Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes extreme emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

While the Supreme Court of Pennsylvania has not specifically adopted § 46, see *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988 (1987) (the Supreme Court left to another day the question of the viability of § 46 in this commonwealth), there is support for the proposition that it is an accepted cause of action in Pennsylvania. See *Williams v. Guzzardi*, 875 F.2d 46, 51 (3d Cir.1989) (Third Circuit predicted Pennsylvania Supreme Court will ultimately adopt § 46).

The extreme and outrageous conduct alleged by plaintiff is that defendants 1) continually threatened plaintiff and his family with criminal prosecution for trespass beginning in 1986, 2) in June of 1988, caused plaintiff's daughter-in-law to be issued a criminal trespass citation by the Pennsylvania State Police for the use of roads and lanes within the Preserve,[5] 3) confronted and harassed plaintiff's business associate who was attempting to find the McCormick cottage, and 4) falsely and maliciously accused plaintiff of firing a gun at him and his wife. While it is extremely doubtful that this conduct rises to the level of outrageousness required for such a claim, more significantly, plaintiff's claim suffers from a total lack of supporting medical evidence.

It is basic to tort law that an injury is an element to be proven. Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on

**5.** It should be noted that plaintiff was not present when his daughter-in-law was arrested.

the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress. Moreover, the requirement of some objective proof of severe emotional distress will not present an unsurmountable obstacle to recovery. Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries. We therefore conclude that if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence.

*Kazatsky v. King David Memorial Park,* supra, 515 Pa. at 197, 527 A.2d at 995.

Plaintiff has admitted that he has never been in the care of a psychiatrist, psychologist or any other provider of mental health services as a result of the incidents complained of in the complaint. He admits that the only ailment which he connects to the conduct is cardiovascular surgery which was performed to remedy a circulation problem which pre-dated the defendants' conduct. He has also conceded that he has no medical expert who will testify that this medical condition is connected to the defendants' conduct.[6]

Given the state of the record on this claim, partial summary judgment in favor of the defendants and against the plaintiff will be entered with respect to the intentional infliction of emotional distress claim asserted in Count V of the complaint.

## V. STANDING

■ Defendants have moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join a party in accordance with Fed.R.Civ.P. 19. Defendants argue that due to certain discrepancies concerning the ownership of E.L.P. Corporation's stock and/or its assets, this action should be dismissed for failure to join an indispensable party in accordance with Rule 19.[7] Significantly, they fail to identify any creditor which could lay claim to Lot No. 6. Due to the speculative nature of this argument, the Court is reluctant to accept it.

The defendants also argue that E.L.P., as the legal title-holder to Lot No. 6, is an indispensable party. However, E.L.P. no longer exists, and due to the lack of estate administration on the part of the McCormicks, it is unclear whether plaintiff was in fact the sole shareholder of E.L.P. when its corporate charter was voided.

■ Although the defendants are correct in maintaining that there could very well be other parties not privy to this action who may have an interest in Lot No. 6, in the Court's view the circumstances surrounding the deed to Lot No. 6 raise serious issues concerning the standing of the plaintiff to bring this action, rather than the indispensability of other parties. Although plaintiff's standing has not been challenged by the defendants, the issue is jurisdictional and may be raised by the Court sua sponte. *National Coalition to Ban Handguns v. Bureau of A.T.F.,* 715 F.2d 632, 633 (D.C.Cir.1983), citing *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908).

■ The United States Supreme Court has held that in order for a party to assert standing, he must show that 1) he has suffered some actual injury or threatened harm, 2) which fairly can be traced to the challenged action, and 3) which is capable of judicial redress. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700, 709 (1982). According to the deeds on record in Pike County, E.L.P., a corporation

---

**6.** See ¶ 1(a)–(e) of defendants' Statement of Material Facts and the plaintiff's Response to defendants' Statement of Material Facts.

**7.** The defendants contend that creditors may have obtained an interest in E.L.P. either: 1) during the probate of Elizabeth McCormick's estate because there is no evidence that Elizabeth McCormick had a will and, under the intes-

tate law, as personalty, her shares of E.L.P. stock would be subject to the unpaid claims of her creditors before descending to her heirs; or 2) upon the voiding of E.L.P.'s corporate charter because a dissolved corporation must pay its creditors before transferring any assets to its shareholders.

which ceased to exist some ten years ago, not the plaintiff, is the legal title-holder of Lot No. 6. In addition, plaintiff, to this point, has not proved that he was the sole shareholder of E.L.P. stock at or subsequent to the time its charter was voided. Therefore, plaintiff has failed to establish that he holds the legal title to the property. Notably, he has also failed to establish equitable title to the property.

In view of this, even if the Court were to address plaintiff's claims, it would be unable to fashion a remedy due to the fact that the plaintiff has not established any legal right to the property. Cf. *Cannon Bros., Inc. v. D'Agostino,* 356 Pa.Super. 286, 514 A.2d 614 (1986) (a party seeking to enjoin invasion of his right in and to real property must demonstrate that he has a clear right to the property in question). Therefore, since plaintiff is not the legal title-holder to Lot No. 6, he lacks standing to bring any claims related to the property. This lack of standing affects all claims related to the property, including the defendants' counterclaims. Accordingly, the Court will hold its ruling on the remainder of the parties' respective motions for summary judgment in abeyance until the resolution of this issue.

Therefore, this action will be stayed and the plaintiff will be given ninety days to establish legal ownership of the property. If the plaintiff fails to establish legal ownership of the property within the time allowed, this action will be dismissed. In view of the length of the stay, the jury selected April 1, 1991 will be discharged.